**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

        v.

SEAN CHARLES DUNN,

        *Defendant.*

Case No. 25-CR-252 (CJN)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SEAN CHARLES DUNN'S MOTION TO DISMISS
THE INFORMATION FOR VINDICTIVE AND SELECTIVE PROSECUTION**

Sabrina P. Shroff (D.D.C. Bar No. NY0481)
80 Broad Street, 19th Floor
New York, NY 10004
Tel: (646) 763-1490
sabrinashroff@gmail.com

Julia Gatto (*Pro Hac Vice*)
STEPTOE LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
jgatto@steptoe.com

Nicholas Silverman (D.D.C. Bar No. 1014377)
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
nsilverman@steptoe.com

*Counsel for Defendant
Sean Charles Dunn*

Dated: October 15, 2025

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................. 3

ARGUMENT ....................................................................................................... 8

I.   Mr. Dunn Is Being Selectively Prosecuted in Violation of the First and Fifth
Amendments. ................................................................................................. 8

   A.   *Mr. Dunn Was Singled Out For Prosecution and Treated Differently From
   Similarly Situated Others Who Do Not Share His Politics*................................ 9

      1.   Apolitical Offenders Are Not Prosecuted for Similar Conduct. ...................... 10

      2.   January 6 Defendants Charged With The Same Statute for Far More Serious
      Conduct Have Escaped Prosecution................................................................. 12

   B.   *There Is Clear Evidence of Discriminatory Purpose*................................... 15

      1.   The Government's Selective Enforcement Violates the First Amendment
      Because Its Prosecutorial Choice Turned on the Content and Viewpoint of Mr.
      Dunn's Speech................................................................................................ 15

      2.   The Government's Selective Enforcement Violates the Fifth Amendment
      Because It Has a Discriminatory Purpose. ....................................................... 17

II.   Mr. Dunn Is Being Vindictively Prosecuted in Violation of the Fifth Amendment.
20

III.   At a Minimum, Discovery Is Required. .................................................... 23

CONCLUSION ................................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aiken County,*
   725 F.3d 255 (D.C. Cir. 2013)..............................................................................................9

*Am. Freedom Defense Initiative v. WMATA,*
   901 F.3d 356 (D.C. Cir. 2018)...........................................................................................18

*Att'y Gen. v. Irish People, Inc.,*
   684 F.2d 928 (D.C. Cir. 1982)...........................................................................................11

*Branch Ministries v. Richardson,*
   970 F. Supp. 11 (D.D.C. 1997).....................................................................................18, 19

*Clark v. Cmty. For Creative Non-Violence,*
   468 U.S. 288 (1984) ..........................................................................................................17

*Dep't of Com. v. New York,*
   588 U.S. 752 (2019) ..........................................................................................................16

*Frederick Douglass Found., Inc. v. D.C.,*
   82 F.4th 1122 (D.C. Cir. 2023) ....................................................................................*passim*

*Nat'l Endowment for Democracy v. United States,*
   No. 25-cv-00648, 2025 WL 2305477 (D.D.C. Aug. 11, 2025)..........................................16

*Texas v. Johnson,*
   491 U.S. 397 (1989) ..........................................................................................................17

*United States v. Adams,*
   870 F.2d 1140 (6th Cir. 1989) ......................................................................................21, 23

*United States v. Armstrong,*
   517 U.S. 456 (1996) ............................................................................................................8

*United States v. Atwood,*
   No. 24-cr-199 (RDM) (D.D.C. Dec. 12, 2024) .................................................................11

*United States v. Ball,*
   No. 23-cr-160 (D.D.C. Apr. 27, 2023) ..............................................................................13

*United States v. Barnes,*
   No. 18-MJ-54 (RMM), 2019 WL 5538550 (D.D.C. Oct. 24, 2019), *aff'd*, 481 F.
   Supp. 3d 15 (D.D.C. 2020)................................................................................................23

*United States v. Boughner,*
   No. 22-cr-20 (D.D.C. Dec. 19, 2021).................................................................................13

*United States v. Haggerty*,
    528 F. Supp. 1286 (D. Col. 1981) ................................................................................... 18

*United States v. Hastings*,
    126 F.3d 310 (4th Cir. 1997) ...................................................................................... 11

*United States v. Jones*,
    159 F.3d 969 (6th Cir. 1998) ...................................................................................... 18

*United States v. Judd*,
    579 F. Supp. 3d 1 (D.D.C. 2021)........................................................................... 9, 18, 20

*United States v. Khanu*,
    664 F. Supp. 2d 28 (D.D.C. 2009)................................................................................ 9

*United States v. Khanu*,
    668 F. Supp. 2d 28 (D.D.C. 2009)............................................................................... 18

*United States v. Lang*,
    No. 21-cr-53 (D.D.C. Feb. 21, 2024) .......................................................................... 13

*United States v. Mangieri*,
    694 F.2d 1270 (D.C. Cir. 1982)................................................................................... 9

*United States v. Markey*,
    No. 23-cr-00417 (APM) (D.D.C. Nov. 26, 2024) ................................................................ 11

*United States v. Navarro*,
    651 F. Supp. 3d 212 (D.D.C. 2023)............................................................................... 8, 9

*United States v. Ojala*,
    544 F.2d 940 (8th Cir. 1976)...................................................................................... 19

*United States v. Reifschneider*,
    No. 24-cr-508 (CJN), 2025 WL 2718033 (D.D.C. Jan. 16, 2025) .................................................... 15

*United States v. Rodella*,
    59 F. Supp. 3d 1331 (D.N.M. 2014).............................................................................. 17

*United States v. Safavian*,
    649 F.3d 688 (D.C. Cir. 2011)............................................................................... 21, 23

*United States v. Sills*,
    No. 21-cr-00040 (TNM) (D.D.C. Mar. 14, 2023) ............................................................... 11

*United States v. Steele*,
    461 F.2d 1148 (9th Cir. 1972).................................................................................... 10

*Wayte v. United States*,
    470 U.S. 598 (1985) ............................................................................................. 8

**Statutes**

18 U.S.C. § 111 .................................................................................................... 9, 10, 11, 13

18 U.S.C. § 111(a) ..................................................................................................... 13

18 U.S.C. § 111(a)(1) ............................................................................................... 7, 15

**Other Authorities**

Ali Bianco, *Trump defends his pardons for Jan. 6 attack on Capitol*, POLITICO (Jan. 21, 2025), https://www.politico.com/news/2025/01/21/trump-defends-pardons-jan-6-00199843 ............................................................................................................. 12

Ana Faguy, *Trump deploys National Guard to Washington DC and pledges crime crackdown*, BBC NEWS (Aug. 12, 2025), https://www.bbc.com/news/articles/cm2110me5g4o ........................................... 3

Andrew Beaujon, *Sandwich Guy Has Become DC's Hero*, WASHINGTONIAN (Aug. 18, 2025), https://www.washingtonian.com/2025/08/18/sandwich-guy-has-become-dcs-hero/ ........................................................................................................................ 4

Attorney General Pamela Bondi (@AGPamBondi), X (Aug. 14, 2025, at 11:09 A.M.), https://x.com/AGPamBondi/status/1956010229348413694 ................................. 7

Exec. Order No. 14,333, 90 Fed. Reg. 39301 (Aug. 14, 2025) ...................................... 3

Former DOJ Employee Who Hurled a Hoagie at a U.S. Customs and Border Patrol Officer Charged With Assault, DEP'T OF JUSTICE (Aug. 14, 2025) ................................. 7

Jeanine Pirro (@JudgeJeanine), X (Aug. 13, 2025, 2:54 PM) ...................................... 5

Kurtzleben, *President Trump taps federal law enforcement agencies to police Washington*, NPR (Aug. 9, 2025), https://www.npr.org/2025/08/08/g-s1-81755/trump-dc-federal-policing-washington-dc ......................................................... 3

Mark Segraves & Darcy Spencer, *National Guard troops in DC, White House touts arrests on 1st day of takeover*, NBC WASHINGTON (Aug. 13, 2025) ........................... 3

Meg Anderson & Danielle Kurtzleben, President Trump taps federal law enforcement agencies to police Washington, D.C., NPR (Aug. 9, 2025) .......................................... 3

Nicole Sganga, *White House signals increase in federal law enforcement in D.C., after Trump threatens federal takeover*, CBS NEWS (Aug. 8, 2025) ................................... 3

Olivia Craighead, *The Resistance Found Its New Folk Hero*, THE CUT (Aug. 14, 2025) ........................ 4

OREGON PUBLIC BROADCASTING (Jan. 21, 2025) ........................................................... 13

Proc. No. 10887, 90 Fed. Reg. at 8331 No. 10887 ....................................................... 12

*The Jan. 6 Attack: The Cases Behind the Biggest Criminal Investigation in U.S. History*,
   NPR (Mar. 14, 2025) ................................................................................................................ 13

The White House (@WhiteHouse), X (Aug. 14, 2025, at 6:04 P.M.) ......................................... 6

Tom Dreisbach, *Video shows Department of Justice official urging Jan. 6 rioters to 'kill'
   cops,* NPR (Aug. 7, 2025) ...................................................................................................... 22

*U.S. Customs and Border Patrol Officer Charged With Assault*, DEP'T OF JUSTICE (Aug.
   14, 2025), https://www.justice.gov/usao-dc/pr/former-doj-employee-who-hurled-
   hoagie-us-customs-and-border-patrol-officer-charged ........................................................... 7

*White House Posts Insane Video of Over 20 Armed FBI and U.S. Marshals Going to
   Arrest the Subway Sandwich Thrower After Offering to Turn Himself In*,
   https://www.reddit.com/r/ThatsInsane/comments/1mr2gc4/white_house_posts_insan
   e_video_of_over_20_armed/ ................................................................................................... 6

## PRELIMINARY STATEMENT

This prosecution is a blatant abuse of power. The federal government has chosen to bring a criminal case over conduct so minor it would be comical—were it not for the unmistakable retaliatory motive behind it and the resulting risk to Mr. Dunn. Mr. Dunn tossed a sandwich at a fully armed, heavily protected Customs and Border Protection ("CBP") officer. That act alone would never have drawn a federal charge. What did was the political speech that accompanied it.

The "sandwich throwing" incident was captured on video and went viral, along with Mr. Dunn's blunt criticism of the Administration's militarized takeover of Washington, D.C. Days after declining to prosecute in D.C. Superior Court, the United States Attorney's Office escalated this petty incident into a federal felony case in direct retaliation for Mr. Dunn's statements on the video.

The manner in which the government announced the charges and arrested Mr. Dunn strips away any doubt about its motives. The Department of Justice's top official publicly branded Mr. Dunn part of the "Deep State." The U.S. Attorney for the District of Columbia posted crude taunts about where to "stick [his] Subway sandwich." Prosecutors ignored Mr. Dunn's offer to surrender voluntarily and instead staged a choreographed, militarized raid on his small apartment—then posted the arrest video online, complete with a heavy metal soundtrack.

The D.C. U.S. Attorney's Office cannot identify a single comparable case—one involving the tossing of a soft object at a law enforcement officer—where the federal response came anywhere close to this level of force, publicity, and humiliation. Indeed, as far as we can tell, no such incident has ever been prosecuted by the D.C. U.S.

Attorney's Office. The reason why is clear: the government's extraordinary reaction here is explained not by the alleged act itself, but by the political views of the person accused of committing it.

As confirmation, this Court need look no further than how this same prosecuting office handled cases involving individuals with political views opposite to Mr. Dunn's who committed far more serious acts of violence against law enforcement officers on January 6, 2021. The contrast is stark. While Mr. Dunn's alleged sandwich toss triggered deployment of a heavily armed SWAT team for a militarized arrest, the filing of felony charges, and continued prosecution even after a local court and a grand jury refused to indict, January 6 defendants—some captured on video hurling explosives, beating officers with baseball bats and riot shields, and spraying chemical irritants— saw their prosecutions dismissed and their convictions pardoned.

This is, plain and simple, political viewpoint discrimination. And the Constitution forbids it. The Fifth Amendment prohibits selective enforcement rooted in discrimination. The First Amendment bars the government from retaliating against citizens for their political viewpoints. When prosecution is driven by political animus— as the record here plainly shows—dismissal is not merely warranted, it is required.

This Court should dismiss the charges.

FACTUAL BACKGROUND

The events at issue in the Information took place on the night of August 10, 2025 and were captured on multiple video recordings. That night, Mr. Dunn encountered a group of federal and local armed officers, including agents from CBP, at the corner of 14th Street NW and U Street NW. That weekend, President Trump had indicated his intent to deploy 800 National Guard troops to rescue Washington, D.C. from a "situation of complete and total lawlessness" and prepared Executive Order No. 14333, placing the D.C. Metropolitan Police Department under federal control.[1] CBP had begun patrolling with local law enforcement as part of the Administration's plan to flood downtown D.C. with agents from CBP, including units typically assigned to border security operations hundreds of miles away.[2]

On the videos capturing the August 10 events, Mr. Dunn can be heard voicing strong opposition to federal immigration enforcement practices and the presence of the

---

[1]Nicole Sganga, *White House signals increase in federal law enforcement in D.C., after Trump threatens federal takeover*, CBS NEWS (Aug. 8, 2025), https://www.cbsnews.com/news/white-house-increase-federal-law-enforcement-in-d-c/; Ana Faguy, *Trump deploys National Guard to Washington DC and pledges crime crackdown*, BBC NEWS (Aug. 12, 2025), https://www.bbc.com/news/articles/cm2110me5g4o; Exec. Order No. 14,333, 90 Fed. Reg. 39301 (Aug. 14, 2025).

[2] *See* Ana Faguy, *Trump deploys National Guard to Washington DC and pledges crime crackdown*, BBC NEWS (Aug. 12, 2025), https://www.bbc.com/news/articles/cm2110me5g4o; *see also* Mark Segraves & Darcy Spencer, *National Guard troops in DC, White House touts arrests on 1st day of takeover*, NBC WASHINGTON (Aug. 13, 2025), https://www.nbcwashington.com/news/local/national-guard-troops-arrive-in-dc-federal-agents-seen-after-trumps-police-takeover/3973902/; Meg Anderson & Danielle Kurtzleben, *President Trump taps federal law enforcement agencies to police Washington, D.C.*, NPR (Aug. 9, 2025), https://www.npr.org/2025/08/08/g-s1-81755/trump-dc-federal-policing-washington-dc.

CBP officers, who were conspicuously stationed in front of a gay club hosting a "Latin Night." He called the officers "fascists" and "racists," and chanted "shame" toward them. The recording also captures the moment when Mr. Dunn tossed a Subway sandwich he was holding towards the bulletproof vest of one of the officers.

Immediately after the sandwich toss, roughly 20 law enforcement officers can be seen swarming, detaining, and arresting Mr. Dunn.

The afternoon after his arrest, Mr. Dunn appeared in D.C. Superior Court, where he was informed that he would not be prosecuted and was free to go home.

But the "sandwich throwing" video—along with Mr. Dunn's pointed criticism of the Administration—went viral. As the video spread across the internet over the next few days, Mr. Dunn became an unexpected symbol of public opposition to the federal deployment in Washington, D.C.



Murals of "the sandwich guy" appeared on K Street (above); protestors marched with signs reading "Don't f*** with D.C. unless you want this footlong"; and countless news stories and social media posts referring to Mr. Dunn as a "folk hero" amassed tens of thousands of views.[3]

---

[3] *See, e.g.,* Olivia Craighead, *The Resistance Found Its New Folk Hero*, THE CUT (Aug. 14, 2025), https://www.thecut.com/article/sandwich-throw-doj-employee-folk-hero.html; Andrew Beaujon, *Sandwich Guy Has Become DC's Hero*, WASHINGTONIAN (Aug. 18,

At the height of the public attention, and despite having already determined the incident did not warrant charges, the U.S. Attorney's Office for the District of Columbia reversed course and elected to pursue a federal felony prosecution against Mr. Dunn.

If the decision to bring charges was eyebrow-raising, the manner by which the Department of Justice turned the prosecution into a public spectacle was jaw-dropping.



On Wednesday, August 13, 2025, while Mr. Dunn was at work at the Department of Justice, U.S. Attorney Jeanine Pirro took to the internet to announce the felony charges against Mr. Dunn. In a post on X, Ms. Pirro declared that in line with President Trump's decision to bring federal troops to Washington, D.C., "we have charged [Dunn] with a felony—assault on a police officer."[4] She then went further, telling Mr. Dunn to "stick your Subway sandwich somewhere else."[5]

---

2025), https://www.washingtonian.com/2025/08/18/sandwich-guy-has-become-dcs-hero/.

[4] *See* Jeanine Pirro (@JudgeJeanine), X (Aug. 13, 2025, 2:54 PM),
https://x.com/JudgeJeanine/status/1955704405161808286.

[5] *Id.*



Shortly after Ms. Pirro's unusual video, Mr. Dunn learned that a warrant had been issued for his arrest. He tried to voluntarily surrender, but his efforts to turn himself in were met with silence.[6] Instead, the Department of Justice, at great expense to taxpayers, staged an elaborate, choreographed militarized raid on Mr. Dunn's studio apartment. Late on the night of August 13, 2025, law enforcement officials decked in riot gear, including military-grade assault rifles, descended on Mr. Dunn's apartment with their weapons drawn to execute an arrest warrant. The raid was attended by multiple videographers who used professional recording equipment to document and

---

[6] *White House Posts Insane Video of Over 20 Armed FBI and U.S. Marshals Going to Arrest the Subway Sandwich Thrower After Offering to Turn Himself In,* https://www.reddit.com/r/ThatsInsane/comments/1mr2gc4/white_house_posts_insane_video_of_over_20_armed/.

professionally edit a propaganda video of Mr. Dunn's arrest—which was then posted to the official White House X account (still shot from X post above).[7]

The political theatre did not end there. The highest-ranking official in the Department of Justice, Attorney General Pam Bondi, also took to the internet in her professional capacity to weigh in on the "sandwich thrower." Seizing on Mr. Dunn's political views and promoting an unfounded claim that he belonged to a cabal of political dissidents, Ms. Bondi announced that Mr. Dunn was being prosecuted and fired from the job he had dutifully occupied for nearly three years, holding him out, in her own words, as "an example of the Deep State."[8] Rather than distance itself from this blatantly politicized statement, the Department of Justice embraced it, issuing its own official press release citing and quoting Attorney General Bondi's remarks with approval.[9]

On August 26, 2025, the government convened a grand jury in an effort to secure a felony indictment against Mr. Dunn for assaulting a federal law enforcement officer. The grand jury rejected the government's efforts and refused to return an indictment charging Mr. Dunn with a crime. Undeterred by the fact that its own prosecutors and a duly convened grand jury both declined to prosecute the sandwich throw at issue, the

---

[7] The White House (@WhiteHouse), X (Aug. 14, 2025, at 6:04 P.M.), https://x.com/WhiteHouse/status/1956114803295953325.

[8] Attorney General Pamela Bondi (@AGPamBondi), X (Aug. 14, 2025, at 11:09 A.M.), https://x.com/AGPamBondi/status/1956010229348413694.

[9] *Former DOJ Employee Who Hurled a Hoagie at a U.S. Customs and Border Patrol Officer Charged With Assault*, DEP'T OF JUSTICE (Aug. 14, 2025), https://www.justice.gov/usao-dc/pr/former-doj-employee-who-hurled-hoagie-us-customs-and-border-patrol-officer-charged.

government elected to proceed, filing the instant criminal information charging Mr.

Dunn with a misdemeanor violation of 18 U.S.C. § 111(a)(1).

This motion to dismiss the information for vindictive and selective prosecution

follows.

<u>ARGUMENT</u>

I.    <u>Mr. Dunn Is Being Selectively Prosecuted in Violation of the First and Fifth
Amendments.</u>

The Constitution forbids the government from singling out individuals for

prosecution based on impermissible factors—chief among them, political viewpoint. *See*

*United States v. Navarro*, 651 F. Supp. 3d 212, 235 (D.D.C. 2023). Mr. Dunn's case is a

textbook example of such selective enforcement. He has been targeted, not because of

the nature of his conduct, but because of the political speech that accompanied it. The

disparity between Mr. Dunn's treatment and that of similarly situated individuals—

both apolitical and politically aligned with the current Administration—makes clear

what the government has, in effect, already acknowledged through its actions and

public statements: this prosecution is rooted in viewpoint discrimination, not neutral

law enforcement.

The prohibition on selective prosecution "imposed by the equal protection

component of the Due Process Clause of the Fifth Amendment" is an important

constraint on prosecutorial discretion. *United States v. Armstrong,* 517 U.S. 456, 464

(1996) (citation modified). As the Supreme Court has explained, "[s]electivity in the

enforcement of criminal laws is . . . subject to constitutional constraints," and "the

decision to prosecute may not be deliberately based upon an… arbitrary classification,

including the exercise of protected statutory and constitutional rights." *Wayte v. United States,* 470 U.S. 598, 608 (1985) (citation modified).

Where the government "selectively prosecutes [a defendant] based on impermissible considerations, the equal protection remedy is to dismiss the prosecution." *In re Aiken County*, 725 F.3d 255, 264 n.7 (D.C. Cir. 2013). Political viewpoints—and other forms of political expression—are among the most clearly impermissible bases for prosecution. "The Government cannot base its decision to prosecute on . . . a defendant's political beliefs." *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2021) (citation modified).

To prevail on a motion to dismiss based on selective prosecution, a defendant must show (1) that he was singled out for prosecution from others similarly situated; and (2) that his prosecution was motivated by a discriminatory purpose. *United States v. Khanu*, 664 F. Supp. 2d 28, 31 (D.D.C. 2009); *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982). Both requirements are satisfied here.

A.    *Mr. Dunn Was Singled Out For Prosecution and Treated Differently From Similarly Situated Others Who Do Not Share His Politics.*

Courts find prosecutions unconstitutional when a defendant "is similarly situated to a person against whom the law was not enforced," except for the defendant's constitutionally protected status or activity. *Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122, 1137 (D.C. Cir. 2023). Where the government has initiated the "prosecution of a defendant based on his political beliefs," the prosecution is unconstitutional. *Navarro*, 651 F. Supp. 3d at 235.

Mr. Dunn is similarly situated to two groups who have avoided prosecution under 18 U.S.C. § 111: (1) *apolitical low-level offenders*—individuals whose conduct

matches the allegations here but who are never charged under § 111; and (2) *political allies of the Administration*—January 6 defendants who committed more serious assaults on law enforcement yet have had § 111 charges dismissed, convictions pardoned, or sentences commuted, while being publicly praised by the Administration.

Political alignment is the only meaningful distinction between Mr. Dunn and these comparators. The government's decision to prosecute him—while sparing others whose conduct is the same or worse—demonstrates impermissible political discrimination. *See United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972) (reversing a defendant's conviction for refusing to answer questions on the 1970 census where the only distinction between the defendant and others who were not prosecuted was the defendant's public and vocal opposition to the census).

### 1.    *Apolitical Offenders Are Not Prosecuted for Similar Conduct.*

The first comparator group consists of apolitical, low-level offenders whose conduct is materially indistinguishable from the allegations against Mr. Dunn. These individuals—whose actions involve minor, non-injurious contact with law enforcement—are routinely not prosecuted under 18 U.S.C. § 111. Their cases are either declined entirely or handled, if at all, in local court. They are not "federalized," and they certainly do not result in militarized arrests, felony charges, or public condemnation by senior Department of Justice officials.

This is not a matter of speculation. A targeted Westlaw search of D.D.C. trial court filings citing § 111 and containing the terms "threw," "throw," "throws," or "thrown" yielded 199 results. Of those, approximately 35 involved assault charges based on a thrown object. In every such case, the object was capable of causing injury—

rocks, bricks, bottles, metal tools—not a soft sandwich—or accompanied by other types of assault.[10] The search did not return D.D.C. cases charging § 111 violations based solely on throwing a soft object because those cases do not exist. The U.S. Attorney's Office for D.C. does not bring § 111 charges for trivial, non-injurious acts unless there is some other motivating factor.

That factor, in Mr. Dunn's case, is his political viewpoint. Unlike the apolitical individuals who have engaged in similarly, relatively minor conduct without consequence, Mr. Dunn's actions were accompanied by pointed, public criticism of the Administration's immigration and law enforcement policies, criticism that went viral, transforming Mr. Dunn into a symbol of opposition to the Administration's federal deployment in Washington, D.C. The government's response—escalating a tossed sandwich into a federal case, staging a militarized arrest, and publicly branding Mr. Dunn as part of the "Deep State"—makes clear that it was not the conduct that triggered prosecution, but the politics.

In short, the only meaningful distinction between Mr. Dunn and the apolitical individuals who have not been prosecuted is politics. All other circumstances "present no distinguishable legitimate prosecutorial factors that might justify" the government's disparate treatment. *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997) (citation modified); *see also Att'y Gen. v. Irish People, Inc.*, 684 F.2d 928, 946 (D.C. Cir.

---

[10] *See, e.g.*, Gov't Sentencing Mem. at 2, *United States v. Atwood*, No. 24-cr-199 (RDM) (D.D.C. Dec. 12, 2024) ("a metal bat, a metal pole, [and] a thick metal pipe"), ECF No. 26; Gov't Sentencing Mem. at 36, *United States v. Markey*, No. 23-cr-00417 (APM) (D.D.C. Nov. 26, 2024) ("parts of a broken table, a pole, [and] an unknown liquid"), ECF No. 46; Gov't Sentencing Mem. at 2, *United States v. Sills*, No. 21-cr-00040 (TNM) (D.D.C. Mar. 14, 2023) ("several pole-like objects"), ECF No. 574.

1982) ("Discrimination cannot exist in a vacuum; it can be found only in the unequal treatment of people in similar circumstances."). That sole distinction is constitutionally impermissible.

   2.   *January 6 Defendants Charged with The Same Statute for Far More Serious Conduct Have Escaped Prosecution.*

The disparate treatment of apolitical, low-level offenders is not the only evidence of unconstitutional selectivity. An even more pronounced disparity emerges when comparing Mr. Dunn's case to the January 6 defendants who were charged under the same statute as Mr. Dunn, but whose cases have been dismissed or whose convictions have been pardoned or commuted.

On Inauguration Day 2025, President Trump issued a presidential proclamation, published in the Federal Register, declaring that the January 6 prosecutions constituted a "grave national injustice that has been perpetrated upon the American people over the last four years." Proc. No. 10887, 90 Fed. Reg. at 8331. In addition to pardoning and commuting the sentences of approximately 1,200 individuals already convicted and sentenced for their roles in the attack, the Proclamation further directed the Attorney General to pursue dismissal "of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." *Id.* The following day, President Trump justified the sweeping clemency by stating: "these were people that actually love our country."[11] *Id.*

---

[11] Ali Bianco, *Trump defends his pardons for Jan. 6 attack on Capitol*, POLITICO (Jan. 21, 2025), https://www.politico.com/news/2025/01/21/trump-defends-pardons-jan-6-00199843.

Following the Proclamation, the Department of Justice moved to dismiss all pending January 6-related charges. In approximately 160 of those cases, the defendants had been charged by grand juries with assaulting federal officers in violation of 18 U.S.C. § 111(a)—the same offense with which Mr. Dunn is charged.[12]

The conduct alleged in the dismissed cases involved extraordinary acts of violence. Among those whose § 111 charges were dropped are individuals accused of:

- "throwing an explosive device that detonated upon at least 25 officers," causing fear of death and psychological trauma. *See* Stmt. of Facts at 2, *United States v. Ball*, No. 23-cr-160, ECF No. 1-1 (D.D.C. Apr. 27, 2023);

- using "a metal bike rack to push against law enforcement officers" and "repeatedly spraying them" with a "chemical spray." Mot. in Supp. of Pretrial Detention at 1, 4, *United States v. Boughner*, No. 22-cr-20 (D.D.C. Dec. 19, 2021), ECF No. 9;

- using "a baseball bat or a riot shield" to assault "multiple police officers for hours," later telling an interviewer that the next phase of the plan to overturn the election could be described in "[o]ne word: Guns." Gov't Resp. to Mot. for Release at 1–2, *United States v. Lang*, No. 21-cr-53 (D.D.C. Feb. 21, 2024), ECF No. 127.[13]

---

[12] *See The Jan. 6 Attack: The Cases Behind the Biggest Criminal Investigation in U.S. History*, NPR (Mar. 14, 2025), https://www.npr.org/2021/02/09/965472049/the-capitol-siege-the-arrested-and-their-stories (showing 160 cases involving charges of "Assaulting, Resisting or Impeding Certain Officers" where the court granted the government's motion to dismiss the case and no pardon was involved).

[13] These prosecutions were no aberration. Numerous individuals were charged with disturbing acts of politically motivated violence against federal agents on January 6. *See* Carrie Johnson, et al., *Trump gave pardons to hundreds of violent Jan. 6 rioters.*

These individuals are not merely similarly situated to Mr. Dunn—who, like them, is accused of politically motivated conduct, under the same statute, in the same jurisdiction—they are, by any objective measure, more culpable. Their conduct was violent, sustained, and, in many cases, resulted in serious injuries to law enforcement officers. They therefore serve as particularly compelling comparators.

As Judge Jackson explained in *United States v. Stone*, defendants are "similarly situated" when they engage in the same "type of conduct" and, among other factors, the evidence of that conduct is "as strong or stronger" than the evidence against the defendant. 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)). Courts also consider factors such as the relative culpability of the individuals and the general deterrence value of enforcement. *See Frederick Douglass,* 82 F.4th at 1137–38. By all of these metrics, the January 6 defendants—whose conduct was vastly more violent and in far greater need of deterrence—should not have been treated more leniently than Mr. Dunn. Yet their cases were dismissed by the same prosecuting office that now pursues Mr. Dunn for a non-injurious, isolated sandwich toss.

The comparison underscores the Justice Department's glaringly different treatment of two sets of defendants: those accused of significant acts of violence *whose political views align with the Administration*, and Mr. Dunn, accused only of tossing a sandwich, *whose political views are opposed to the Administration*. The reason for this otherwise inexplicable disparity is plain. The former have been publicly praised by the

---

*Here's what they did,* OREGON PUBLIC BROADCASTING (Jan. 21, 2025), https://www.opb.org/article/2025/01/21/trump-grants-clemency-to-all-defendants-in-jan-6-cases/.

14

Administration as "patriots" who "love our country," while Mr. Dunn has been branded by the Attorney General as a member of the "Deep State." By the government's own public statements, the disparate treatment of the January 6 defendants and Mr. Dunn is driven by politics and partisanship.

       B.     *There Is Clear Evidence of Discriminatory Purpose.*

The second element of a selective enforcement claim is the infringement of a constitutional right. *Frederick Douglass Found.*, 82 F.4th at 1140 ("The second element of a selective enforcement claim is the infringement of a constitutional right," including both "the First and Fifth Amendments"). Although this typically requires a showing of discriminatory intent, that showing is not necessary where the government's prosecutorial choice turns on either the content or viewpoint of the defendant's speech. *See id.* at 1141; Gov't Opp'n to Mot. to Dismiss, *United States v. Reifschneider*, No. 24-cr-508 (CJN), 2025 WL 2718033 (D.D.C. Jan. 16, 2025) (conceding that selective prosecution based on viewpoint does not require a showing of discriminatory intent and quoting *Frederick Douglass*, 82 F.4th at 1144). Here, the government's selective enforcement of § 111(a)(1) against Mr. Dunn demonstrates both viewpoint discrimination and discriminatory intent and therefore violates both the First and Fifth Amendments.

       1.     *The Government's Selective Enforcement Violates the First Amendment Because Its Prosecutorial Choice Turned on the Content and Viewpoint of Mr. Dunn's Speech.*

"[S]elective enforcement of a neutral and facially constitutional law may run afoul of the First Amendment if the government's prosecutorial choices turn on the content or viewpoint of speech." *Frederick Douglass*, 82 F.4th at 1141 (emphasizing that

discrimination based on viewpoint is "especially invidious"). "'[G]overnment favoritism in public debate is so pernicious to liberty and democratic decisionmaking' that viewpoint discrimination will almost always be 'rendered unconstitutional.'" *Id.* (quoting *Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 337 (D.C. Cir. 2018) (Wilkins, J., concurring)). Because of the prohibition on viewpoint discrimination, "the government cannot pick and choose between speakers … when enforcing the laws." *Id.* "It would undermine the First Amendment's protections for free speech if the government could enact a content-neutral law and then discriminate against disfavored viewpoints under the cover of prosecutorial discretion." *Id.* at 1142.

In *Frederick Douglass*, the D.C. government allegedly enforced a content- and viewpoint-neutral defacement ordinance by arresting individuals who wrote a pro-life "Black Pre-Born Lives Matter" message on sidewalks. *Id.* The same D.C. government, however, allegedly declined to arrest individuals who wrote "Black Lives Matter" on sidewalks. *Id.* The D.C. Circuit held that "[t]he District may act to prevent the defacement of public property, but it cannot open up its streets and sidewalks to some viewpoints and not others." *Id.* at 1151. Such viewpoint discrimination constituted prohibited selective enforcement—even in the absence of a demonstration of discriminatory intent. *Id.* at 1145. So too here.

Just as the "Black Pre-Born Lives Matter" writers were allegedly arrested because their message conflicted with the local government's political views, Mr. Dunn was prosecuted for tossing a harmless object because his speech conflicted with the Administration's politics. The Court is "not required to exhibit a naivete from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (quoting

16

*United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977)); *accord Nat'l Endowment for Democracy v. United States*, No. 25-cv-00648,__ F. Supp. 3d __, 2025 WL 2305477, at *4 (D.D.C. Aug. 11, 2025). The unprecedented nature of the charges, coupled with the fact that they were brought only after the publicity surrounding Mr. Dunn's political speech, cannot be ignored.

In *Frederick Douglass*, the D.C. Circuit permitted an inference of viewpoint discrimination from the government's decision not to prosecute "Black Lives Matter" writers engaged in comparable conduct. Likewise, this Court can draw the same inference from the government's consistent decision not to charge anyone who has tossed a soft object at police—or even engaged in far more serious acts—when those acts carried a political message favored by the Administration.[14]

### 2. The Government's Selective Enforcement Violates the Fifth Amendment Because It Has a Discriminatory Purpose.

The Government's selective prosecution of Mr. Dunn has a discriminatory purpose. Such a discriminatory purpose, alternately referenced as "invidious discrimination," means that an action was taken "because of, not merely in spite of," the defendant's membership in an identifiable group. *Frederick Douglass*, 82 F.4th at 1147 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). "The discriminatory purpose need not be the only purpose, but it must have been a motivating factor in the decision."

---

[14] It is irrelevant that Mr. Dunn was prosecuted for assault rather than defacement because the reason for Mr. Dunn's prosecution was his speech—not his actions. Even if that were not the case, if Mr. Dunn's actions were intended to communicate a particularized message that would be reasonably understood by those who viewed the actions and are therefore protected by the First Amendment. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989); *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 294 (1984).

17

*United States v. Rodella*, 59 F. Supp. 3d 1331, 1352 (D.N.M. 2014) (quoting *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003)). "Direct evidence of that purpose is rarely available, so courts permit defendants to use statistical disparities and other indirect evidence to show intent." *Judd*, 579 F. Supp. 3d at 4; *see Branch Ministries v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997) (noting that proof via indirect or direct evidence is permitted). Here, both direct and indirect evidence demonstrate a discriminatory purpose—Mr. Dunn was charged because of his political beliefs.

The Government's own actions and words have effectively conceded its discrimination against Mr. Dunn based on political belief. Although the government "rarely flatly admits that it is engaging in viewpoint [or other] discrimination," it appears to have done so here. *Am. Freedom Defense Initiative v. WMATA*, 901 F.3d 356 (D.C. Cir. 2018). The government chose to prosecute Mr. Dunn contemporaneously with firing him as "an example of the Deep State" that they were "up against."[15] Before that announcement, Mr. Dunn had been released without charges or any indication that the government intended to prosecute him. When Attorney General Bondi and U.S. Attorney Pirro learned of Mr. Dunn's political beliefs, however, they announced his prosecution within two days.

The government's discriminatory intent is further evidenced by its departure

---

[15] It is black-letter law that the Court may consider such out-of-court statements as evidence of discriminatory intent. *See, e.g., United States v. Jones*, 159 F.3d 969, 977 (6th Cir. 1998) (holding that officers' creation of t-shirts celebrating arrest of defendants and mailing of postcards taunting the defendants gave rise to inference of discriminatory intent); *cf. United States v. Khanu*, 668 F. Supp. 2d 28, 34-35 (D.D.C. 2009) (denying selective prosecution motion due to lack of evidence that prosecutors were aware of defendant's religious affiliation).

from normal procedures after those procedures resulted in a declination on August 11, 2025. *See United States v. Haggerty*, 528 F. Supp. 1286, 1293 (D. Col. 1981) (considering the "failure to follow … normal prosecutorial procedures" as evidence of selective prosecution); *see also Branch Ministries*, 970 F. Supp. at 17 (noting that "the very rarity of an official act can support a finding of discriminatory intent" combined with other evidence).

Here, Mr. Dunn was not only labeled an enemy, he was treated like an enemy. After learning that a federal warrant for his arrest had been issued, Mr. Dunn attempted to self-surrender, but his efforts were ignored. Instead, to effectuate an arrest warrant for a nonviolent incident in which no one was harmed, law enforcement officers stormed Mr. Dunn's apartment late on August 13, 2025 using SWAT-style tactics, firearms drawn and equipped with bulletproof vests and riot shields. Mr. Dunn's arrest was filmed and made into a professionally edited propaganda video featuring dramatic music that was posted on official White House social media platforms.

Indeed, the Court need look no further than the disparity between Mr. Dunn's prosecution and the treatment of supporters of the current Administration's policies. In *United States v. Mumphrey*, the district court found that the fact that all defendants in a counter-drug operation were African-American "is probative of discriminatory intent, particularly when the relevant population is not 100% African American." 193 F. Supp. 3d 1040, 1063 (N.D. Cal. 2016). Here, the Administration and U.S. Attorney's Office have chosen to extend mass pardons, dismissals, and declinations to the Trump supporters who assaulted officers on January 6, and instead have chosen to prosecute

only opposing protestors during the ensuing months. *Cf. United States v. Ojala*, 544 F.2d 940, 943 n.3 (8th Cir. 1976) (labeling an enforcement procedure focused on "vocal offender[s]" "inherently suspect" (quoting *United States v. Steele*, 461 F.2d 1148, 1152 (9th Cir. 1972))). As in *Mumphrey*, this Court should conclude that to be sufficient evidence of discriminatory intent, particularly when combined with the totality of the circumstances.

As Judge McFadden emphasized, "[j]ustice requires that 'like cases be treated alike' and that 'there not be one rule for Democrats and another for Republicans.'" *Judd*, 579 F. Supp. 3d at 9 (quoting Merrick Garland, Remarks to DOJ Employees on His First Day, Mar. 11, 2021). "Especially during moments of politically charged unrest, the Justice Department must strive for even-handed justice." *Id.* Where, as here, the Department has instead labeled the defendant as a political enemy, taunted and ridiculed him, and brought an unprecedented charge, the Department has failed to live up to Judge McFadden's urging and has selectively prosecuted. The Court should dismiss the case.

II.    <u>Mr. Dunn Is Being Vindictively Prosecuted in Violation of the Fifth Amendment.</u>

The fact that Mr. Dunn's prosecution is constitutionally impermissible on selective prosecution grounds is reason enough for dismissal. But the very same record—the escalation of a trivial incident into an unprecedented federal offense; the public rhetoric from senior officials; the theatrically humiliating, militarized arrest; and the decision to press forward after both local prosecutors and a grand jury declined charges—also reveals a separate and independent defect: vindictive prosecution. The information should be dismissed on that basis as well.

"[A] prosecution which would not have been initiated but for governmental 'vindictiveness'—a prosecution, that is, which has an 'actual retaliatory motivation'—is constitutionally impermissible." *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (citing *Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974)). To establish prosecutorial vindictiveness, a defendant may submit (1) "evidence of the prosecutor's actual [vindictiveness]" or (2) "evidence sufficient to establish a 'realistic likelihood of vindictiveness,' thereby raising a presumption the Government must rebut with objective evidence justifying its action." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (per curiam) (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).

The evidence here establishes both actual vindictiveness and a presumption of vindictiveness that the government cannot rebut. Much of it overlaps with the proof of selective prosecution described above. But certain facts bear particular emphasis.

First, the words and actions of the Department of Justice's leadership, including the U.S. Attorney for D.C. and the Attorney General, provide overwhelming evidence that the goal of this prosecution is to punish Mr. Dunn and deter him and others who share his opposition to the current Administration's policies.

Particularly revealing are Attorney General Bondi's own words and actions. In joining the public chorus against Mr. Dunn, she not only announced his arrest but also his termination from the Department of Justice—touting the firing as a victory over "the Deep State we have been up against for seven months." Her post began with the warning, "If you touch any law enforcement officer, we will come after you," yet other DOJ employment decisions make clear that Mr. Dunn's firing—like his prosecution—

was driven not by his alleged conduct, but by his perceived membership in the "Deep State." Specifically, the DOJ currently employs Jared Lane Wise, a former FBI supervisory agent that had joined in the events of January 6, 2021, chanting "Kill 'em!" as law enforcement officers were attacked.[16] Mr. Wise was pardoned and *hired* by the Department of Justice to serve as an assistant to the acting Pardon Attorney. Mr. Dunn, in contrast, was *fired*.[17]

Second, the public spectacle the government created in arresting Mr. Dunn—and then posting a highly produced video of the arrest online—also strongly confirms that this prosecution has been, from the outset, driven by retaliatory animus. Rather than permitting Mr. Dunn to self-surrender quietly and with a modicum of dignity for the alleged offense of tossing a sandwich, the government orchestrated a militarized arrest involving armed officers. Make no mistake, this spectacle was never about the sandwich; it was about punishing Mr. Dunn. The deliberate distribution of the arrest video was clearly intended to send a powerful and vindictive message—not only to Mr. Dunn, but also to the growing number of people who share his opposition to the Administration's policies.

In light of the abundance of clear evidence of actual retaliatory motivation and the undeniable appearance of vindictiveness, the Constitution does not permit this prosecution to proceed, and the information must be dismissed.

---

[16] Tom Dreisbach, *Video shows Department of Justice official urging Jan. 6 rioters to 'kill' cops*, NPR (Aug. 7, 2025), https://www.npr.org/2025/08/07/nx-s1-5493197/doj-trump-jan-6-defendant-jared-wise-capitol-riot#:~:text=%22The%20Department%20of%20Justice%20could,defendants%2C%20including%20the%20most%20violent/

[17] *Id.*

III.    <u>At a Minimum, Discovery Is Required.</u>

Even if the Court were to conclude that dismissal is not yet warranted, the Court should order discovery before ruling on Mr. Dunn's motion. Where the defendant presents evidence of a reasonable likelihood of vindictiveness, then the district court must allow discovery and an evidentiary hearing on that issue. *See, e.g.*, *Adams*, 870 F.2d at 1146. Similarly, with respect to selective prosecution, a "defendant may obtain discovery . . . by showing some evidence tending to show the existence of the essential elements of the claim." *See United States v. Barnes*, No. 18-MJ-54 (rmm), 2019 WL 5538550, at *7 (D.D.C. Oct. 24, 2019), *aff'd*, 481 F. Supp. 3d 15 (D.D.C. 2020) (citation modified).

Both burdens are met by the government's extensive public statements reflecting its vindictive and selective prosecution of Mr. Dunn. Likewise, Attorney General Bondi's and U.S. Attorney Pirro's statements, as well as the totality of circumstances surrounding Mr. Dunn's prosecution, create a sufficient evidentiary basis to conclude that there is a "realistic likelihood of vindictiveness" that entitles Mr. Dunn to discovery. *Safavian*, 649 F.3d at 692. This evidence does not stand alone. In addition to the government's statements, the Court can infer vindictiveness and selectivity from the rarity of any prosecution against a person for throwing a soft object and the fact this prosecution only occurred after the U.S. Attorney's Office and the grand jury declined local and felony charges (respectively). The Court should dismiss this case, but if it does not, it should order the discovery that the government has thus far refused to voluntarily provide.[18]

---

[18] Undersigned counsel sent six discovery requests to the government related to its charging decision and social media propaganda. Today, the government refused each of the six requests.

CONCLUSION

For the foregoing reasons, the charges against Mr. Dunn should be dismissed.

Respectfully submitted,

/s/ _____
Sabrina P. Shroff (D.D.C. Bar No. NY0481)
80 Broad Street, 19th Floor
New York, NY 10004
Tel: (646) 763-1490
sabrinashroff@gmail.com

Julia Gatto (*Pro Hac Vice*)
STEPTOE LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
jgatto@steptoe.com

Nicholas Silverman (D.D.C. Bar No. 1014377)
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
nsilverman@steptoe.com

*Counsel for Defendant*
*Sean Charles Dunn*

Dated: October 15, 2025