```
1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2
     UNITED STATES OF AMERICA,      ) Criminal Action
3                                   ) No. 1:21-CR-564
                     Plaintiff,     )
4                                   ) MOTION HEARING - via
     vs.                            ) Zoom
5                                   )
     MATTHEW DASILVA,               ) Washington, D.C.
6                                   )
                     Defendant.     ) May 23, 2023
7                                   ) Time:  4:00 p.m.
     _____
8
              TRANSCRIPT OF MOTION HEARING - via Zoom
9           HELD BEFORE THE HONORABLE CARL J. NICHOLS
                  UNITED STATES DISTRICT JUDGE
10   _____

11                      A P P E A R A N C E S

12   For Plaintiff:          KATHERINE ELIZABETH BOYLES
                             United States Attorney's Office
13                           157 Church Street, 25th Floor
                             New Haven, CT 06510
14
                             ADAM MICHAEL DREHER
15                           DOJ-USAO
                             601 D Street NW
16                           Washington, DC 20530

17   For Defendant:          MARINA MEDVIN
                             Medvin Law, PLC
18                           277 South Washington Street
                             Suite 210
19                           Alexandria, VA 22314

20

     _____
21

22   Court Reporter:         Tamara M. Sefranek, RMR, CRR, CRC
                             Official Court Reporter
23                           United States Courthouse, Room 6714
                             333 Constitution Avenue, NW
24                           Washington, DC  20001
                             202-354-3246
25
```

```
1                        P R O C E E D I N G S
2              THE COURTROOM DEPUTY:  Your Honor, this is Criminal
3    Case 21-564, United States of America versus Matthew DaSilva.
4              Will the parties on the video conference line
5    identify yourselves for the record?  We'll start with
6    government counsel today.
7              MS. BOYLES:  Good afternoon, Your Honor.  ASA
8    Katherine Boyles on behalf of the United States.  With me in my
9    office is also AUSA Adam Dreher, who is my co-counsel for the
10   case.
11             THE COURT:  Good afternoon.
12             MS. MEDVIN:  Good afternoon, Judge.  I'm Maria Medvin
13   on behalf of Matthew DaSilva.
14             THE COURT:  Good afternoon, Ms. Medvin.  Ms. Medvin,
15   does Mr. DaSilva consent to proceed with this hearing by video?
16             MS. MEDVIN:  He does.  Thank you.
17             THE COURT:  Thank you.  And I agree it's appropriate
18   to proceed by video as well.
19             There are a couple of very small preliminary things I
20   wanted to address before we get to what I want to hear argument
21   on.
22             The first is just to make sure that we are set with
23   the waiver of trial by jury and proceeding as a bench trial.  I
24   think the question in my mind is whether the parties agree that
25   I could do the relevant colloquy -- well, that I should do the
```

1    relevant colloquy now, and then I could do so over video, or if

2    that is the kind of colloquy that would have to happen in

3    person?

4            Ms. Boyles, do you have a view?

5            MS. BOYLES:  Your Honor, I think that we can proceed

6    by video, but I would ask the Court to then supplement the

7    record when we're in person just to confirm that once again,

8    once we're all together.

9            THE COURT:  Ms. Medvin?

10            MS. MEDVIN:  It does not make a difference for us one

11    way or another.  A record is a record, Judge, whether it's in

12    person or through video conference.  Our words are our words.

13            But I do believe there is a form he needs to fill

14    out, which he has not done yet, but we will make sure that he

15    signs that form and submits it for the record.  But we have no

16    objection to doing it over video, whether it's now or later.

17    It's not, for our purposes, an issue that we plan on

18    contesting.

19            THE COURT:  Since it seems like at least the

20    government agrees that it would be appropriate to at least

21    confirm the waiver in person, and because I don't have the

22    signed waiver, why don't we just proceed on the assumption that

23    we will do the colloquy at some point in person.  We can sign

24    the waiver then, and we'll just take care of it all together

25    there.  That's fine.

1          Second question I have is, I note that there are

2    motions being filed consistent with the pretrial scheduling

3    order.  But I wanted to ask whether or to remind the parties

4    that they have an obligation to meet and confer -- this is

5    under paragraph 1 of the scheduling order -- before filing any

6    such motions to discuss whether any issues presented by the

7    motions can be resolved by agreement of the parties.

8          The reason I ask is because at least the topics

9    discussed in some of those motions have in other cases ended up

10   being basically issues that were not actually in dispute, and I

11   ended up reading a bunch of papers that were irrelevant.

12   Because when the parties focused on the issues, they realized

13   that they could largely agree.

14          So have the parties been discussing, consistent with

15   paragraph 1 of the scheduling order, the issues presented by

16   the various motions, and have they failed to reach agreement to

17   the extent those motions are being filed?  The other thing I

18   note is, at least the couple that I looked at, I didn't see any

19   statement in there -- maybe it was later, but I didn't see the

20   statement that the parties had done that meet-and-confer

21   process.

22          Ms. Boyles?

23          MS. BOYLES:  Yes, Your Honor.  So we did --

24   Ms. Medvin and I did speak last Friday about the motions being

25   filed.  I think we actually are -- and Ms. Medvin can jump in

1  as well -- we are in substantial agreement on several of the

2  motions that have been filed.  However, both parties thought it

3  was prudent to make our record of what our formal positions

4  are.

5          At this point I'd be happy to agree to file some kind

6  of supplementary status report with regard to which motions

7  are -- you know, are going to be opposed and apprise the Court

8  of what our positions are and if we've been able to come to any

9  agreement.

10         But I do think that there's agreement that we can

11 come to, and Ms. Medvin and I have already begun that

12 communication process, even though we haven't formally

13 conducted that prior to filing the motions.

14         THE COURT:  All right.  So that's great from my

15 perspective.  I impose that requirement both to try to,

16 obviously, have the parties reach agreement where they can, but

17 then also where there is agreement on issues, then I don't have

18 to resolve them, it's also helpful to know.

19         What I will do as to the motions that were filed on

20 the 19th is I'll just wait to start reviewing them until I hear

21 from the parties when we get the oppositions to the ones that

22 are opposed -- maybe there's a nonopposition -- or perhaps just

23 the government, together with Ms. Medvin, can wrap up in a

24 status report a description of the issues that are actually

25 disputed in the pending motions.

 1              So for now, I'm not going to do anything with the

 2      motions.  I'm not going to review them because it sounds like

 3      there may be some agreement not reflected in the motions as

 4      stated.  Okay.  That's all fine by me.

 5              Here's the issue that I want principally to discuss

 6      today.  And, Ms. Boyles, I think I'd like to start with you.

 7              The government in, for example, page -- on page 2 of

 8      its supplemental filing on March 21st, 2023, identifies three

 9      different times and three different acts that the defendant

10      took.  I'm not suggesting that the government is limited to

11      that evidence.  I'm just saying the government identifies three

12      acts.

13              The indictment, though, at least as -- for example,

14      to the 111 charge -- if I could find it here, I will.  The

15      indictment does not identify which of those three, or whether

16      it's all three of those acts, constitute the principal

17      violation of the 111 charge or a -- I'm not talking about the

18      enhancement.  I'm talking about what act was the forcible

19      assault, interference, impeding.

20              And as a result, it seems to me very difficult to

21      know, based on the indictment, when you line it up with that

22      page, whether the grand jury decided to indict Mr. DaSilva for

23      what he did at 2:45 p.m., at 4:20 p.m., and/or at 4:33 p.m.

24              And I think that what -- I don't think that -- my

25      question is not really about notice.  It's about the

1    constitutional requirement that the grand jury indict for the

2    same offense that the defendant is prosecuted for at trial.

3    And it seems to me that, at least based on the indictment, I

4    have no way of knowing which of those three, or perhaps more,

5    offenses the grand jury concluded were adequate -- it had

6    adequate evidence of to indict the defendant.

7           And then sort of related to that -- that's maybe the

8    easiest way to think about the case -- is that same

9    indictment -- that same count -- sorry -- does not identify

10   what other felony Mr. DaSilva had the intent to commit when he

11   did whatever conduct we're talking about.  And if there are at

12   least more than one possible alternatives, I can't tell from

13   the indictment what the grand jury indicted him for when it

14   comes to that additional intent enhancement.

15          This is to contrast this indictment here with a

16   number of others I've seen.  For example, in cases like *United*

17   *States vs. Kenyon*, *United States vs. McKellop*, *United*

18   *States vs. Harris*, all of which are before me -- and some

19   others -- the government included as separate counts violations

20   of 111 taken at different times against different officers

21   often, and sometimes with different weapons or other -- through

22   other manner.

23          So, for example, in the *United States vs. McKellop*

24   indictment, Count 1 -- well, actually, Count 1 through --

25   Counts 1 through 12 are all 111 violations alleged, but each of

1    them -- each of those separate counts identifies either the

2    specific time at which the count or the violation occurred --

3    so Count 1 is at 1:02 p.m. -- and/or identifies the specific

4    conduct.

5              So in Count 1 it says, for example, by throwing an

6    object in a line of officers.  So we know that it's at

7    1:02 p.m. by throwing an object to a line of officers and/or

8    identifies a particular victim of the conduct.  And so, for

9    example, Count 4 says that *McKellop* assaulted KM, an officer

10   from the MPD.

11             And so for that indictment and others that I've had,

12   it's pretty clear if you go through the counts that the grand

13   jury indicted the defendant for a very particularized conduct

14   for violation of assault, the assault charge -- or the 111

15   charge.  I shouldn't say assault.  The 111 count.

16             Here, it seems to me we don't have that.  And I'm not

17   really concerned about notice issues in the due process sense.

18   What I'm really concerned about is, how do we know that the

19   conduct that the grand jury thought was sufficient to be

20   indictable under 111 is the conduct that the government is

21   going to prove at trial?

22             So I wanted to frame it that way because there are

23   some other concepts here.  But I think comparing, in

24   particular, the government's brief -- which is very helpful, by

25   the way -- on this -- at page 2 about those three different

1    episodes at three different times, and I assume the

2    government's view is it is entitled to prove that Mr. DaSilva

3    did all three of those things.

4            The question, though, is how do we know that the

5    grand jury concluded that there was indictable offenses as to

6    each of those three events?  So, Ms. Boyles?

7            MS. BOYLES:  Thank you, Your Honor.  So I have a

8    couple of responses, the first of which I do want to be really

9    careful about not venturing into what precisely the grand jury

10   considered, absent a sealing order and bringing this proceeding

11   under seal given the grand jury secrecy rules.

12           And I don't think that there's a motion here to

13   pierce the grand jury's proceedings and bring that into the

14   public proceeding.

15           THE COURT:  Let me just pause you there because it

16   does answer one question for me.

17           What, if any, information that was in front of the

18   grand jury or related to the grand jury's inquiry has been

19   produced to Mr. DaSilva/Ms. Medvin?

20           MS. BOYLES:  All of it, Your Honor.

21           THE COURT:  Okay.

22           MS. BOYLES:  And to be -- so to be clear, what that

23   means is that Ms. Medvin does have the grand jury transcript of

24   the factual presentation to the grand jury, as well as exhibits

25   that were presented to the grand jury both when the case was

1    initially indicted in September of 2021, as well as when it was

2    superseded in, I believe, January of 2022.

3              THE COURT:  Right.  So you've produced all that

4    material to Ms. Medvin, and the issue is disclosing that or

5    discussing that?

6              MS. BOYLES:  Yes, Your Honor.

7              THE COURT:  Okay.  Understood.  Thank you.

8              MS. BOYLES:  So then the second point I'd make is, as

9    this Court is aware, we can charge in the conjunctive and

10   consider all of those different time frames of acts that you've

11   referenced and then prove the case in the disjunctive.

12             So I don't think that there is an issue with, if the

13   grand jury was presented with this range of conduct and then

14   ultimately the fact finder in this case, the Court, if the fact

15   finder decides that only one of those acts or all of them or

16   some of them are the acts that they are actually going to find

17   guilt or innocence on.  So I don't think that that, in and of

18   itself, is an issue.

19             And I'd also bring to the Court --

20             THE COURT:  Can I just pause you there?  I agree that

21   if the indictment said in Count 2 that Mr. DaSilva violated 111

22   by at 2:45 doing A, at 4:22 doing B, and at 4:33 doing C, and,

23   and, and, then the government could prove A and/or B and/or C,

24   I agree with that.  But the indictment doesn't say that.

25             So how do I know that the grand jury reached an

1  indictment here in the conjunctive rather than just picking A

2  or B or C?

3          MS. BOYLES:  Well, I think, Your Honor, we're in a

4  bit of an odd procedural posture, and I appreciate the Court's

5  concerns in raising these issues.

6          But as of right now, I don't think there is a way for

7  Your Honor to know with certainty what exactly the grand jury

8  considered without piercing grand jury secrecy.

9          That said, I will maybe get ahead of the argument a

10  little bit here and just say that co-counsel and I have been

11  discussing superseding in this case, sensitive to not wanting

12  to delay trial and not for any purposes of delay, but

13  potentially to add more detail just to sort of make things

14  easier and streamline this process.

15          Our intention is not to add any counts, but simply to

16  go back to the grand jury.  And so that's something that I

17  raised to see if that -- if there's a way we can streamline the

18  proceedings today, see if we can come to an agreement about

19  what would be an appropriate time frame.  Our position would be

20  that we can go to the grand jury relatively quickly, and I

21  don't think it will materially change the preparation of the

22  defense in this case.  Hopefully, it would help the preparation

23  of the defense.

24          So I don't think we would be needing to change the

25  trial schedule.  Obviously, I would defer to Ms. Medvin on

1        those points.

2            So I do just want to put that out there, that we have

3        been in internal conversations about going back to the grand

4        jury.

5            THE COURT:  So -- thank you, because that was going

6        to be one of the questions I asked or perhaps even strong

7        suggestions I was going to make.  Because it seems to me, if we

8        just talk about Count 2, there are at least two not

9        insignificant problems from my perspective.

10            One problem is the one I've already mentioned, which

11        is by not including any detail around the act that the forcible

12        assault, impeding, whatever, it leaves me not knowing -- and as

13        I said, whether the grand jury hypothetically -- again, if you

14        have acts A, B, and C, but the grand jury might have thought

15        that act A was the indictable act only.  And the government,

16        because it can prove -- as you've said, it can take it in the

17        disjunctive, with this indictment the government could pick

18        just act C, and then we would have the risk of a mismatch.

19            MS. BOYLES:  Right.

20            THE COURT:  But you get it.  So on that question, if,

21        for example, Count 2 said Mr. DaSilva did forcibly assault,

22        blah-blah-blah; to wit, at 2:45 he did X and at 4:20 p.m. he

23        did Y and at 4:33 he did Z, I would think that that indictment

24        is completely adequate as to this concern.

25            Then -- I think then there's another question, which

1    is really where this all sort of started.  That is, the

2    identification of what other felony he acted with the intent to

3    commit.  Because I think the -- it's the exact same problem

4    conceptually, which is if the grand jury thought he was acting

5    with intent to commit felony B, but the government proves

6    intent to commit felony A, that's a problem in my view.

7    There's a mismatch.

8         And that could also, again, be solved by saying, as

9    the indictment does in, for example, the *United States vs.*

10   *Harris*, another case I have where it says this is a 111 count,

11   with the intent to commit another felony, to wit, a violation

12   of 1512(c)(2) and a violation of 231.

13        So that would, in my view, mean that the grand jury

14   there concluded that he acted with -- *Harris* acted with intent

15   to commit those two felonies.  That's the conjunctive framing

16   you made earlier.  And then the government would be free to

17   prove just the disjunctive.

18        So it seems to me, this issue would be altogether

19   cured -- my concern in this way would be cured if Count 2 was

20   reindicted to identify with specificity the acts and then the

21   other felony's intent.

22        MS. BOYLES:  So a couple of response -- quick

23   responses, Your Honor.  First, I want to be careful.  I don't

24   necessarily want to concede that, as a legal matter, everything

25   that you've laid out is required.

1          THE COURT:  I understand that the government's view

2     is actually that the indictment, as it's currently framed, is

3     adequate.  You preserved that argument, I think.

4          MS. BOYLES:  That's right, Your Honor.  And I would

5     just bring up the analogy.

6          In my other day job when I'm not prosecuting these

7     kinds of cases, we have drug cases all the time where we have

8     indicted based on a positive field test of one set of -- one

9     baggy of drugs.  And then when it comes time for the trial,

10    we've actually sent those baggies to the lab, there may be more

11    baggies.

12         And as long as we are not trying to get into a higher

13    mandatory minimum category, we're still operating under an

14    841(b)(1)(C), then that's not a constructive amendment to go

15    back to the trial jury and say, we actually have more drugs or

16    more potent drugs or the test came back that it was fentanyl

17    and not heroin and that sort of thing.  That's not any kind of

18    constructive amendment.

19         So I would just preserve that argument, that we're

20    not conceding that this indictment is insufficient in any way.

21    However, for -- to preserve the Court's resources, we're happy

22    to go back to the grand jury and supersede.  And we're open to

23    both defense counsel and, of course, consideration of what's

24    the appropriate timeline for that.

25         I think the earliest we could be back in the grand

1    jury is a week from today.  I'd have to check if there's time

2    available.  But I think we -- I'm sorry, a week from tomorrow.

3    I think we could supersede on the 31st.  But I'm happy to

4    discuss the scheduling once you have a chance to speak with

5    Ms. Medvin as well.

6              THE COURT:  Ms. Boyles, let me just ask you this

7    question on that.

8              I take it from what you said earlier that the

9    government would not be adding any new counts?

10             MS. BOYLES:  Correct.

11             THE COURT:  So we're talking about seven counts, same

12   charges?

13             MS. BOYLES:  That's right.

14             THE COURT:  There would be additional detail on

15   Count 2 at least and perhaps others.  Is it fair to say -- I

16   know you don't know for sure.  But the present intention, if

17   you were to do this, would be to not expand the details in the

18   indictment beyond what's contained in the government's briefs

19   so far about just the conduct that you're thinking of?

20             Just thinking about -- just literally all I'm asking

21   about is, to ensure that this -- a new superseding indictment

22   wouldn't substantially expand the case for purposes of defense

23   preparation?

24             MS. BOYLES:  There wouldn't be anything different

25   from -- I don't want to limit us just to the motions briefing,

1    but I've had pretty extensive conversations with Ms. Medvin.

2    There's nothing that I'm holding on to that she doesn't have or

3    that we haven't discussed in terms of what would be additional

4    detail that could be added between the briefing and our

5    original motions hearing and my conversations with Ms. Medvin.

6         THE COURT:  Okay.  Ms. Medvin, I've been asking

7    Ms. Boyles a lot of questions.  Obviously, on this point, my

8    potential concerns about the indictment could become moot if

9    it's superseded.

10        Do you have a strong problem with the government

11   superseding -- I'll just put it this way -- next week?

12        MS. MEDVIN:  No, Judge.  It's what we requested in

13   our motion to dismiss.  We wish it would have happened earlier

14   so we have more time to prepare, but it sounds like this would

15   address the concerns we outlined in ECF30 specifically.

16        THE COURT:  All right.  So, Ms. Boyles, at least as

17   it relates to the issue that I've been describing, it seems to

18   me that those issues may be overtaken altogether by future

19   events.  And -- I mean, I'm not blessing the new superseding

20   indictment.

21        I just think that it would be very helpful and

22   preserve my resources and the resources of the parties if the

23   government was to cure some of these issues through a

24   superseding indictment, and then we could just get on with the

25   case with that new superseding indictment.  That's not to say

1    that there aren't other issues, of course, that are out there

2    and in Ms. Medvin's motion.

3            But I will just say that this issue is the one that I

4    think is the most substantial presented by her motion.  And,

5    therefore, that's the one I want to start with.

6            And if we are going to effectively moot that out,

7    that seems to me something that's highly important to how we go

8    forward.

9            MS. BOYLES:  I think you're right, Your Honor, and we

10   should proceed as expeditiously as possible.

11           THE COURT:  All right.  Now, let me just -- okay.  So

12   on this topic, Ms. Medvin, I think I'm agreeing with your

13   positions altogether, so I don't need to hear from you.  I will

14   say this.

15           On the question of assault, I've reviewed the papers,

16   and I continue to be of the view that Judge Moss has it right

17   with respect to the three categories of conduct that are

18   prohibited by Section 111; that is to say, I'll call it,

19   quote-unquote, simple assault; that's Category 1; Category 2 is

20   assault with physical contact; and then Category 3 is forcible

21   nonassault acts defined by the statute with intent to commit

22   another felony.

23           The with intent to commit another felony is,

24   obviously, something that may become a little bit clearer with

25   the superseding indictment, what other intended felonies we're

1    talking about, whether it's 231 or something else.

2         But just so the parties know, my view when we have a

3    superseding indictment is that those are the three categories,

4    all of which is to say that an assault is not a requirement of

5    proving a violation of 111 in that third bucket.  It is, of

6    course, for the first two.

7         But that third bucket does require forcible acts of

8    the other kinds identified in the beginning of the statute and

9    the intent to commit another felony.  And then as we discussed,

10   and I already said, Ms. Boyles, we'll see what the superseding

11   indictment says on that question, what other felonies it

12   identifies.

13        Because it appears to me I'm going to be looking at a

14   new superseding indictment, I will either then or at an

15   appropriate time consider whether, even though that's the

16   case -- in other words, even though I believe an assault isn't

17   required for that last bucket -- I'll think about whether the

18   charged conduct for 111 could be done with intent to commit

19   another felony depending on what other felony we're talking

20   about.

21        So I understand your argument, Ms. Medvin, about how

22   you commit a violation of 111 at -- this is paraphrasing it --

23   at 4:33 with the intent to commit a felony that you already

24   committed at 2:45 or something like that.  I get that argument.

25        But it seems to me we're going to have a superseding

1    indictment that will perhaps focus this a little bit closer.

2        And then, as I said before, or at least I implied

3    before in our prior hearing, I don't think the government is

4    limited or estopped from adding additional evidence into the

5    case to prove its counts so long as those counts are otherwise

6    consistent with the grand jury obligations we've been

7    discussing earlier.

8        So just to be, for example, very clear about it, if

9    Count 2 is superseded to say, for example, there's a 111

10    violation at 2:45 and at 4:20 and at 4:33, then the government

11    may have talked some about what happened at 2:45 in its

12    pleadings or discussions with Ms. Medvin and the like.  That's

13    not going to foreclose the government, in my view, from

14    introducing additional evidence in support of its argument that

15    the conduct at 2:45 was a violation of 111 for purposes of

16    Count 2.

17        So, I mean, I think I'm basically just agreeing with

18    the government's position on this component of Ms. Medvin's

19    motion, which in substantial part was trying to, in my view at

20    least, limit the government to the proof that it had been

21    articulating either to Ms. Medvin outside of court or in its

22    papers here.  I don't think the government is so limited.

23        The government is going to be limited in proving to

24    me that the 111 counts occurred at particular times if those

25    are the ones in the indictment.  I know the government has a

1    different view of that, but that's going to be my view.

2            So I guess we're not really having much argument.  I

3    know I've been talking a lot.  But because of the government's

4    offer/suggestion that they're going to go supersede, it seems

5    like some of the discussion here is either my giving you my

6    views generally about what I would apply the superseding

7    indictment or a discussion about how that could cure my

8    principal concern or some other topics.

9            From the government's perspective, do you need more

10   guidance from me right now about the motions that had been

11   fully briefed as of this date?

12           MS. BOYLES:  I don't think so, Your Honor.  From what

13   I've heard, my understanding is that your primary concerns,

14   taking them out of order, is, Number One, IDing which felony is

15   referred to in the -- with the intent to commit another felony

16   prong of Count 2, the Section 111 charge.

17           THE COURT:  Right.  And I would frame it as which

18   felony or felonies.

19           MS. BOYLES:  Yes.  And then second, identifying what

20   the acts are in terms of the section -- also Count 2 under

21   Section 111.  So these concerns are all about making the

22   Section 111 allegations more clear so that the Court is

23   comfortable and understands that the grand jury has considered

24   all of the evidence that we now have.

25           THE COURT:  Yes.  Except the only thing I would add

1    is I was using -- for -- the intent thing you have exactly

2    right.  With respect to the act or the conduct, I think that my

3    concern, again -- the is it A, is it B, is it C concern? -- is

4    most acute or easiest to discuss with respect to Count 2.  And

5    looking at Page 2 of the government's brief that I was

6    reflecting on, I think that that same conceptual concern could

7    also apply with respect to other counts.

8            MS. BOYLES:  Understood.  Thank you for that

9    clarification.

10           THE COURT:  Yes.  So that's just my saying, if all

11   the government were to do was to supersede and change Count 2,

12   I'm not sure that that would fix this conceptual problem I have

13   with respect to some of the other counts.

14           MS. BOYLES:  Okay.  Thank you, Your Honor.

15           THE COURT:  So there's that.  And then -- well, and

16   then what I would say, just to go through my -- I know you were

17   going, but let me just -- my view is, I'm adopting or will

18   adopt what I have in front of me, either -- right, the legal

19   instructions when we're at trial or the superseding indictment.

20   My view is that Judge Moss's interpretation of the three

21   categories of conduct that can violate 111 is correct, and I'm

22   going to apply that in this case.

23           That's my -- I guess my second, or maybe it's my

24   third, sort of, big point.

25           And then the fourth is just to say, in assessing the

1    adequacy of the conduct here vis-a-vis the indicted offenses, I

2    don't believe the government is limited to the proof or the

3    evidence as identified in its papers or in its exchanges with

4    Ms. Medvin.

5         But it does have -- I mean, the way I think about it

6    is, for purposes of motion to dismiss, I have to ensure that

7    the indictment demonstrates that the conduct the government

8    intends to prove at trial as violations of the relevant counts

9    lines up with what the grand jury has indicted Mr. DaSilva on.

10        MS. BOYLES:  Understood.  Thank you, Your Honor.

11        THE COURT:  All right.  Ms. Medvin.

12        MS. MEDVIN:  My apologies.  If I may, throughout this

13   discussion, we've been talking about the potential counts or

14   potential acts for the 111(a), and I pulled up the transcript

15   from our prior hearing.

16        My understanding from the government's position was

17   that the variance in conduct was for Count 1, which is the 231.

18   So if I could get clarification on the act that we're talking

19   about, if they're for 231 or for 111(a).

20        The government stated that there was a panoply of

21   activity and that the different variations of conduct they were

22   discussing all have to do with 231.  The government said, any

23   of which could have been charges, individual 231s, but here

24   they just charged one, sort of, background landscape 231.

25        And so my understanding with the different acts was

 1    we're talking about 231, which is Count 1.

 2         THE COURT:  So from my perspective, conceptually,

 3    it's the same problem.  I was using Count 2 to sort of pinpoint

 4    the conceptual difficulty that I was having.

 5         I don't know sitting here today -- maybe Ms. Boyles

 6    can tell us.  I don't know what the government's theory is as

 7    to whether the conduct at 2:45, the conduct at 4:20, or the

 8    conduct at 4:33, all or only some of them are chargeable as 111

 9    violations.

10         It seems to me that's a question the government has

11    to think through and will be presenting to the grand jury and

12    we'll see an indictment that identifies the relevant conduct.

13    I mean, hypothetically, it seems to me -- but correct me if I'm

14    wrong, Ms. Boyles -- that Count 1 could say -- again,

15    paraphrasing -- there's a civil disorder because Mr. DaSilva

16    did at 2:45 this and at 4:20 this and at 4:33 this.

17         And then Count 2 could say he violated 111 because at

18    4:33 he did this.  Theoretically, that's possible.

19         I don't know what your thoughts are there,

20    Ms. Boyles.  Obviously, you don't know what the grand jury is

21    necessarily going to decide.

22         MS. BOYLES:  Right.  In response to Ms. Medvin's

23    question, our position, I think, has always been consistent

24    that the assault charged in Count 2, we have conceived of that

25    as just the 4:32 to 4:33 time frame.  It's an assault in the

1    tunnel.  And that I don't think we have changed our -- I

2    haven't changed my position on that.

3            That said, if we're going back to the grand jury,

4    we're going to put a full body of evidence in front of the

5    grand jury.  So that may shift depending on the language that

6    we're comfortable putting in front of the grand jury for the

7    indictment.

8            So I don't want to say we're changing our position.

9    I think my intent is that Count 2 remains.  It's the 111 at

10   4:30.

11           That said, if there's additional language because --

12   if we're going back to the grand jury, I want to be clear, we

13   want to make sure this is the last time and that we put as

14   appropriately broad without testing the evidence too far, but

15   put broad enough language into the grand jury this time so that

16   we're covering our bases and aren't needing to go back again.

17           So yes to Ms. Medvin's question with some wiggle room

18   to allow her the fact that we're trying to put a conclusive

19   indictment together at this stage

20           THE COURT:  Okay.  That's very helpful for me to know

21   also.

22           So hypothetically, at least, if things weren't to

23   change much, you might have a Count 2 that says something like

24   111, assault, because at -- or violation of 111 because at

25   4:33 p.m. he did X, right -- which is the conduct at

1    4:33 p.m. -- with intent to commit another felony, to wit, and

2    then identify whichever other felony or felonies that is.

3          And then we would know, from that at least, that the

4    grand jury decided to indict him on the 4:33 conduct and not

5    something else.  Or even more to the point, we would be -- we

6    would know that the grand jury had not indicted him for 2:45

7    conduct, but the government was proving 4:33 conduct, which is

8    really my main concern.

9          And then we would also know that the grand jury had

10   concluded that there was intent to commit another felony or

11   felonies as identified in the count.

12         MS. BOYLES:  Yes.

13         THE COURT:  So that, to me, does solve my concern.  I

14   was using, again, Count 2 as a conceptual tool, I guess.  But,

15   again, it seems to me that my concern isn't just about Count 2.

16   It could apply to the other counts, and I would just very much

17   recommend to the government that they get as much specificity

18   in those other counts as possible.

19         MS. BOYLES:  Understood, Your Honor.

20         THE COURT:  Ms. Medvin, anything else that you would

21   like to discuss today before we now see the superseding

22   indictment?

23         MS. MEDVIN:  For today, no.  Other than the pretrial

24   motions that we filed, one was a motion to dismiss for

25   selective prosecution, and that's an issue that we're not able

1    to resolve.  Although, I guess in the event that -- the

2    government and I did discuss this before I filed, actually.  We

3    discussed before I filed any of the motions.  So, you know, we

4    will reserve that as well.

5         We will try to come up with a filing to advise on the

6    status on all of these, actually.  Disregard.  Sorry.

7         THE COURT:  That is one where I actually assumed

8    there wouldn't be agreement.

9         MS. MEDVIN:  We actually discussed it in advance

10   because we were seeking to find out if I'm wrong.  Maybe there

11   are cases I'm not aware of.  Maybe there's something out there.

12   I wanted to make sure before I filed that I was not wrong about

13   these cases.

14        THE COURT:  Well, I should just say, again, I very

15   much appreciate the parties discussing these issues.  And as to

16   the motions that are being briefed now or maybe not even that

17   brief, but just where parties are stating their positions, I'm

18   not going to review anything until I hear from the parties

19   about what issues are actually joined and where we've got

20   agreement.  Then, of course, just resolve the ones where

21   there's disagreement, okay?

22        All right.  Anything else we should discuss today,

23   then?  Ms. Boyles?

24        MS. BOYLES:  Your Honor, the only thing that I would

25   raise is whether we might push back the response and reply

1    deadlines on the motions.  I'll confess, I had originally

2    pushed for them to be a bit earlier because I had another trial

3    scheduled for June, which has now been continued.

4         And I think if we -- I haven't discussed this

5    previously with Ms. Medvin, but as I was just thinking about

6    it, if we focus in the next week on getting the superseding

7    indictment and allowing Ms. Medvin to consider how that affects

8    her preparation, then maybe it would make sense for our

9    responses and a status update to the Court with respect to

10   whether or not there's any agreement by June 9th and then

11   replies by the 16th, that would give us more of an opportunity

12   that by the 9th we would have a more fulsome update for the

13   Court on where we stand going forward with respect to trial.

14        I think -- I would anticipate that that shouldn't

15   affect or mean that we would need to continue trial itself, but

16   would just give us a little bit more time to work out these

17   issues.

18        THE COURT:  So one possibility might be to just slip

19   the dates that are currently in paragraphs 1 and 2 of the

20   scheduling order by a week each.  And so June 2nd would become

21   June 9; June 9 would become June 16.  And then in paragraph 2,

22   the 404(b) would become June 28th -- or that could stay

23   June 21st, I suppose, depending on the --

24        MS. BOYLES:  That's fine, Your Honor.

25        THE COURT:  And then we would just put into the -- at

1  least orally -- we could add it to the scheduling order, I

2  suppose, just to be very clear that either also on June 16th or

3  perhaps, like, the 20th or something that the parties would

4  submit a notice just identifying clearly the issues that they

5  thought were disputed in the motions.

6         Ms. Medvin, what do you think?

7         MS. MEDVIN:  Judge, I almost think the stipulated

8  summary of any anticipated stipulations and those stipulated

9  testimony should maybe come first.  And then once we resolve

10 what we can stipulate, we can then file any responsive

11 pleadings and our trial briefs.

12        At least in this case, the parties are working quite

13 well together on ironing out which issues need to go before the

14 Court and which issues we can resolve in advance.  So maybe if

15 we tweak this a little bit to put forward stipulations first

16 after the amended indictment comes out, let's stipulate to what

17 we can, and then finish up by resolving what we cannot.

18        THE COURT:  I have an even better idea, which is, in

19 part, because the parties are working so well together.  How

20 about the parties take a crack at revising or proposing a

21 revised scheduling order that includes whatever new schedule

22 you think works for the motions in light of your trial

23 obligations that maybe does include the stipulated stuff coming

24 earlier than the trial brief that has an additional date in

25 there for a notice about issues in dispute, or otherwise in

```
1    light of where we are and in light of the fact this is going to
2    be a bench trial -- I mean, I know that's been the case for a
3    bit now, but the parties probably have a better sense of what
4    makes sense between now and trial -- why don't you just take a
5    crack at meeting and conferring and proposing a revision.
6              I'm open to anything, if it's rational and the
7    parties agree to adopt it.  So rather than do it here with me,
8    why don't you take a crack at just talking about that.
9              Would it be possible to see if you could have that
10   done by May 30th, propose a revised scheduling order?
11             MS. BOYLES:  That's fine for the government, Your
12   Honor.
13             THE COURT:  So that's a week from now, Ms. Medvin.
14             MS. MEDVIN:  That would work, Judge.
15             THE COURT:  Okay.  So why don't we do that, then.
16   Obviously, we'll look for the superseding indictment when it
17   comes in.  Let's assume it's happening.
18             But the parties shall meet and confer and propose a
19   revised scheduling order no later than May 30th.  And, again,
20   if it looks good to me, I'll just adopt it.  Okay?
21             MS. BOYLES:  Great.  Thank you.
22             THE COURT:  Thank you, all.
23             MS. MEDVIN:  Thank you, Judge.
24             (The hearing adjourned at 4:45 p.m.)
25
```

```
1                CERTIFICATE OF OFFICIAL COURT REPORTER

2


3            I, TAMARA M. SEFRANEK, do hereby certify that the

4    above and foregoing constitutes a true and accurate transcript

5    of my stenographic notes and is a full, true and complete

6    transcript of the proceedings to the best of my ability.

7               Dated this 15th day of October, 2025.


8


9                      /s/ Tamara M. Sefranek_____
                       Tamara M. Sefranek, RMR, CRR, CRC
10                     Official Court Reporter
                       Room 6714
11                     333 Constitution Avenue, N.W.
                       Washington, D.C.  20001
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## /

**/s** [1] - 30:9

## 0

**06510** [1] - 1:13

## 1

**1** [12] - 4:5, 4:15, 7:24, 7:25, 8:3, 8:5, 17:19, 22:17, 23:1, 23:14, 27:19
**111** [25] - 6:14, 6:17, 7:20, 7:25, 8:14, 8:15, 8:20, 10:21, 13:10, 17:18, 18:5, 18:18, 18:22, 19:9, 19:15, 19:24, 20:16, 20:21, 20:22, 21:21, 23:8, 23:17, 24:9, 24:24
**111(a** [1] - 22:14
**111(a)** [1] - 22:19
**12** [1] - 7:25
**1512(c)(2** [1] - 13:12
**157** [1] - 1:13
**15th** [1] - 30:7
**16** [1] - 27:21
**16th** [2] - 27:11, 28:2
**19th** [1] - 5:20
**1:02** [2] - 8:3, 8:7
**1:21-CR-564** [1] - 1:3

## 2

**2** [24] - 6:7, 8:25, 10:21, 12:8, 12:21, 13:19, 15:15, 17:19, 19:9, 19:16, 20:16, 20:20, 21:4, 21:5, 21:11, 23:3, 23:17, 23:24, 24:9, 24:23, 25:14, 25:15, 27:19, 27:21
**20001** [2] - 1:24, 30:11
**202-354-3246** [1] - 1:24
**2021** [1] - 10:1
**2022** [1] - 10:2
**2023** [2] - 1:6, 6:8
**2025** [1] - 30:7
**20530** [1] - 1:16
**20th** [1] - 28:3
**21-564** [1] - 2:3
**210** [1] - 1:18
**21st** [2] - 6:8, 27:23
**22314** [1] - 1:19
**23** [1] - 1:6

**231** [7] - 13:12, 18:1, 22:17, 22:19, 22:22, 22:24, 23:1
**231s** [1] - 22:23
**25th** [1] - 1:13
**277** [1] - 1:18
**28th** [1] - 27:22
**2:45** [10] - 6:23, 10:22, 12:22, 18:24, 19:10, 19:11, 19:15, 23:7, 23:16, 25:6
**2nd** [1] - 27:20

## 3

**3** [1] - 17:20
**30th** [2] - 29:10, 29:19
**31st** [1] - 15:3
**333** [2] - 1:23, 30:11

## 4

**4** [1] - 8:9
**404(b** [1] - 27:22
**4:00** [1] - 1:7
**4:20** [5] - 6:23, 12:22, 19:10, 23:7, 23:16
**4:22** [1] - 10:22
**4:30** [1] - 24:10
**4:32** [1] - 23:25
**4:33** [13] - 6:23, 10:22, 12:23, 18:23, 19:10, 23:8, 23:16, 23:18, 23:25, 24:25, 25:1, 25:4, 25:7
**4:45** [1] - 29:24

## 6

**601** [1] - 1:15
**6714** [2] - 1:23, 30:10

## 8

**841(b)(1)(C** [1] - 14:14

## 9

**9** [2] - 27:21
**9th** [2] - 27:10, 27:12

## A

**ability** [1] - 30:6
**able** [2] - 5:8, 25:25
**absent** [1] - 9:10
**accurate** [1] - 30:4
**act** [7] - 6:18, 12:11, 12:15, 12:18, 21:2, 22:18

**acted** [3] - 13:2, 13:14
**acting** [1] - 13:4
**Action** [1] - 1:2
**activity** [1] - 22:21
**acts** [13] - 6:9, 6:12, 6:16, 10:10, 10:15, 10:16, 12:14, 13:20, 17:21, 18:7, 20:20, 22:14, 22:25
**acute** [1] - 21:4
**Adam** [1] - 2:9
**ADAM** [1] - 1:14
**add** [4] - 11:13, 11:15, 20:25, 28:1
**added** [1] - 16:4
**adding** [2] - 15:9, 19:4
**additional** [7] - 7:14, 15:14, 16:3, 19:4, 19:14, 24:11, 28:24
**address** [2] - 2:20, 16:15
**adequacy** [1] - 22:1
**adequate** [4] - 7:5, 7:6, 12:24, 14:3
**adjourned** [1] - 29:24
**adopt** [3] - 21:18, 29:7, 29:20
**adopting** [1] - 21:17
**advance** [2] - 26:9, 28:14
**advise** [1] - 26:5
**affect** [1] - 27:15
**affects** [1] - 27:7
**afternoon** [4] - 2:7, 2:11, 2:12, 2:14
**agree** [7] - 2:17, 2:24, 4:13, 5:5, 10:20, 10:24, 29:7
**agreeing** [2] - 17:12, 19:17
**agreement** [12] - 4:7, 4:16, 5:1, 5:9, 5:10, 5:16, 5:17, 6:3, 11:18, 26:8, 26:20, 27:10
**agrees** [1] - 3:20
**ahead** [1] - 11:9
**Alexandria** [1] - 1:19
**allegations** [1] - 20:22
**alleged** [1] - 7:25
**allow** [1] - 24:18
**allowing** [1] - 27:7
**almost** [1] - 28:7
**alternatives** [1] - 7:12
**altogether** [3] - 13:18, 16:18, 17:13
**amended** [1] - 28:16
**amendment** [2] - 14:14, 14:18
**America** [1] - 2:3

**AMERICA** [1] - 1:2
**analogy** [1] - 14:5
**answer** [1] - 9:16
**anticipate** [1] - 27:14
**anticipated** [1] - 28:8
**apologies** [1] - 22:12
**apply** [4] - 20:6, 21:7, 21:22, 25:16
**appreciate** [2] - 11:4, 26:15
**apprise** [1] - 5:7
**appropriate** [5] - 2:17, 3:20, 11:19, 14:24, 18:15
**appropriately** [1] - 24:14
**argument** [8] - 2:20, 11:9, 14:3, 14:19, 18:21, 18:24, 19:14, 20:2
**articulating** [1] - 19:21
**ASA** [1] - 2:7
**assault** [14] - 6:19, 8:14, 8:15, 12:12, 12:21, 17:15, 17:19, 17:20, 18:4, 18:16, 23:24, 23:25, 24:24
**assaulted** [1] - 8:9
**assessing** [1] - 21:25
**assume** [2] - 9:1, 29:17
**assumed** [1] - 26:7
**assumption** [1] - 3:22
**Attorney's** [1] - 1:12
**AUSA** [1] - 2:9
**available** [1] - 15:2
**Avenue** [2] - 1:23, 30:11
**aware** [2] - 10:9, 26:11

## B

**background** [1] - 22:24
**baggies** [2] - 14:10, 14:11
**baggy** [1] - 14:9
**based** [3] - 6:21, 7:3, 14:8
**bases** [1] - 24:16
**become** [5] - 16:8, 17:24, 27:20, 27:21, 27:22
**BEFORE** [1] - 1:9
**beginning** [1] - 18:8
**begun** [1] - 5:11
**behalf** [2] - 2:8, 2:13
**bench** [2] - 23:9, 29:2
**best** [1] - 30:6
**better** [2] - 28:18, 29:3

**between** [2] - 16:4, 29:4
**beyond** [1] - 15:18
**big** [1] - 21:24
**bit** [8] - 11:4, 11:10, 17:24, 19:1, 27:2, 27:16, 28:15, 29:3
**blah** [3] - 12:22
**blah-blah-blah** [1] - 12:22
**blessing** [1] - 16:19
**body** [1] - 24:4
**BOYLES** [29] - 1:12, 2:7, 3:5, 4:23, 9:7, 9:20, 9:22, 10:6, 10:8, 11:3, 12:19, 13:22, 14:4, 15:10, 15:13, 15:24, 17:9, 20:12, 20:19, 21:8, 21:14, 22:10, 23:22, 25:12, 25:19, 26:24, 27:24, 29:11, 29:21
**Boyles** [13] - 2:8, 3:4, 4:22, 6:6, 9:6, 15:6, 16:7, 16:16, 18:10, 23:5, 23:14, 23:20, 26:23
**brief** [4] - 8:24, 21:5, 26:17, 28:24
**briefed** [2] - 20:11, 26:16
**briefing** [2] - 15:25, 16:4
**briefs** [2] - 15:18, 28:11
**bring** [3] - 9:13, 10:19, 14:5
**bringing** [1] - 9:10
**broad** [2] - 24:14, 24:15
**bucket** [3] - 18:5, 18:7, 18:17
**bunch** [1] - 4:11

## C

**cannot** [1] - 28:17
**care** [1] - 3:24
**careful** [2] - 9:9, 13:23
**CARL** [1] - 1:9
**Case** [1] - 2:3
**case** [15] - 2:10, 7:8, 9:25, 10:11, 10:14, 11:11, 11:22, 13:10, 15:22, 16:25, 18:16, 19:5, 21:22, 28:12, 29:2
**cases** [6] - 4:9, 7:16, 14:7, 26:11, 26:13
**categories** [3] - 17:17,

18:3, 21:21
**category** [1] - 14:13
**Category** [3] - 17:19, 17:20
**certainty** [1] - 11:7
**CERTIFICATE** [1] - 30:1
**certify** [1] - 30:3
**chance** [1] - 15:4
**change** [4] - 11:21, 11:24, 21:11, 24:23
**changed** [2] - 24:1, 24:2
**changing** [1] - 24:8
**charge** [6] - 6:14, 6:17, 8:14, 8:15, 10:9, 20:16
**chargeable** [1] - 23:8
**charged** [3] - 18:18, 22:24, 23:24
**charges** [2] - 15:12, 22:23
**check** [1] - 15:1
**Church** [1] - 1:13
**civil** [1] - 23:15
**clarification** [2] - 21:9, 22:18
**clear** [6] - 8:12, 9:22, 19:8, 20:22, 24:12, 28:2
**clearer** [1] - 17:24
**clearly** [1] - 28:4
**closer** [1] - 19:1
**co** [2] - 2:9, 11:10
**co-counsel** [2] - 2:9, 11:10
**colloquy** [4] - 2:25, 3:1, 3:2, 3:23
**COLUMBIA** [1] - 1:1
**comfortable** [2] - 20:23, 24:6
**coming** [1] - 28:23
**commit** [15] - 7:10, 13:3, 13:5, 13:6, 13:11, 13:15, 17:21, 17:23, 18:9, 18:18, 18:22, 18:23, 20:15, 25:1, 25:10
**committed** [1] - 18:24
**communication** [1] - 5:12
**comparing** [1] - 8:23
**complete** [1] - 30:5
**completely** [1] - 12:24
**component** [1] - 19:18
**concede** [1] - 13:24
**conceding** [1] - 14:20
**conceived** [1] - 23:24
**concepts** [1] - 8:23
**conceptual** [4] - 21:6,

21:12, 23:4, 25:14
**conceptually** [2] - 13:4, 23:2
**concern** [9] - 12:24, 13:19, 20:8, 21:3, 21:6, 25:8, 25:13, 25:15
**concerned** [2] - 8:17, 8:18
**concerns** [5] - 11:5, 16:8, 16:15, 20:13, 20:21
**concluded** [4] - 7:5, 9:5, 13:14, 25:10
**conclusive** [1] - 24:18
**conduct** [25] - 7:11, 8:4, 8:8, 8:13, 8:19, 8:20, 10:13, 15:19, 17:17, 18:18, 19:15, 21:2, 21:21, 22:1, 22:7, 22:17, 22:21, 23:7, 23:8, 23:12, 24:25, 25:4, 25:7
**conducted** [1] - 5:13
**confer** [3] - 4:4, 4:20, 29:18
**conference** [2] - 2:4, 3:12
**conferring** [1] - 29:5
**confess** [1] - 27:1
**confirm** [2] - 3:7, 3:21
**conjunctive** [2] - 10:9, 11:1, 13:15
**consent** [1] - 2:15
**consider** [3] - 10:10, 18:15, 27:7
**consideration** [1] - 14:23
**considered** [3] - 9:10, 11:8, 20:23
**consistent** [4] - 4:2, 4:14, 19:6, 23:23
**constitute** [1] - 6:16
**constitutes** [1] - 30:4
**Constitution** [2] - 1:23, 30:11
**constitutional** [1] - 7:1
**constructive** [2] - 14:14, 14:18
**contact** [1] - 17:20
**contained** [1] - 15:18
**contesting** [1] - 3:18
**continue** [2] - 17:16, 27:15
**continued** [1] - 27:3
**contrast** [1] - 7:15
**conversations** [3] - 12:3, 16:1, 16:5
**correct** [3] - 15:10,

21:21, 23:13
**counsel** [4] - 2:6, 2:9, 11:10, 14:23
**count** [5] - 7:9, 8:2, 8:15, 13:10, 25:11
**Count** [26] - 7:24, 8:3, 8:5, 8:9, 10:21, 12:8, 12:21, 13:19, 15:15, 19:9, 19:16, 20:16, 20:20, 21:4, 21:11, 22:17, 23:1, 23:3, 23:14, 23:17, 23:24, 24:9, 24:23, 25:14, 25:15
**counts** [15] - 7:19, 8:1, 8:12, 11:15, 15:9, 15:11, 19:5, 19:24, 21:7, 21:13, 22:8, 22:13, 25:16, 25:18
**Counts** [1] - 7:25
**couple** [4] - 2:19, 4:18, 9:8, 13:22
**course** [4] - 14:23, 17:1, 18:6, 26:20
**Court** [12] - 1:22, 1:22, 3:6, 5:7, 10:9, 10:14, 10:19, 20:22, 27:9, 27:13, 28:14, 30:10
**court** [1] - 19:21
**COURT** [39] - 1:1, 2:11, 2:14, 2:17, 3:9, 3:19, 5:14, 9:15, 9:21, 10:3, 10:7, 10:20, 12:5, 12:20, 14:1, 15:6, 15:11, 15:14, 16:6, 16:16, 17:11, 20:17, 20:25, 21:10, 21:15, 22:11, 23:2, 24:20, 25:13, 25:20, 26:7, 26:14, 27:18, 27:25, 28:18, 29:13, 29:15, 29:22, 30:1
**Court's** [2] - 11:4, 14:21
**Courthouse** [1] - 1:23
**COURTROOM** [1] - 2:2
**covering** [1] - 24:16
**crack** [3] - 28:20, 29:5, 29:8
**CRC** [2] - 1:22, 30:9
**Criminal** [2] - 1:2, 2:2
**CRR** [2] - 1:22, 30:9
**CT** [1] - 1:13
**cure** [2] - 16:23, 20:7
**cured** [2] - 13:19

# D

**D.C** [2] - 1:5, 30:11
**DaSilva** [10] - 2:3, 2:13, 2:15, 6:22, 7:10, 9:2, 10:21, 12:21, 22:9, 23:15
**DASILVA** [1] - 1:5
**DaSilva/Ms** [1] - 9:19
**date** [2] - 20:11, 28:24
**Dated** [1] - 30:7
**dates** [1] - 27:19
**DC** [2] - 1:16, 1:24
**deadlines** [1] - 27:1
**decide** [1] - 23:21
**decided** [2] - 6:22, 25:4
**decides** [1] - 10:15
**Defendant** [2] - 1:6, 1:17
**defendant** [4] - 6:9, 7:2, 7:6, 8:13
**defense** [4] - 11:22, 11:23, 14:23, 15:22
**defer** [1] - 11:25
**defined** [1] - 17:21
**delay** [2] - 11:12
**demonstrates** [1] - 22:7
**DEPUTY** [1] - 2:2
**describing** [1] - 16:17
**description** [1] - 5:24
**detail** [4] - 11:13, 12:11, 15:14, 16:4
**details** [1] - 15:17
**difference** [1] - 3:10
**different** [12] - 6:9, 7:20, 7:21, 8:25, 9:1, 10:10, 15:24, 20:1, 22:21, 22:25
**difficult** [1] - 6:20
**difficulty** [1] - 23:4
**disagreement** [1] - 26:21
**disclosing** [1] - 10:4
**discuss** [7] - 4:6, 6:5, 15:4, 21:4, 25:21, 26:2, 26:22
**discussed** [6] - 4:9, 16:3, 18:9, 26:3, 26:9, 27:4
**discussing** [6] - 4:14, 10:5, 11:11, 19:7, 22:22, 26:15
**discussion** [3] - 20:5, 20:7, 22:13
**discussions** [1] - 19:12
**disjunctive** [3] - 10:11, 12:17, 13:17

**dismiss** [3] - 16:13, 22:6, 25:24
**disorder** [1] - 23:15
**dispute** [2] - 4:10, 28:25
**disputed** [2] - 5:25, 28:5
**disregard** [1] - 26:6
**DISTRICT** [3] - 1:1, 1:1, 1:9
**dOJ** [1] - 1:15
**dOJ-USAO** [1] - 1:15
**done** [4] - 3:14, 4:20, 18:18, 29:10
**DREHER** [1] - 1:14
**Dreher** [2] - 2:9
**drug** [1] - 14:7
**drugs** [3] - 14:9, 14:15, 14:16
**due** [1] - 8:17

# E

**earliest** [1] - 14:25
**easier** [1] - 11:14
**easiest** [2] - 7:8, 21:4
**ECF30** [1] - 16:15
**effectively** [1] - 17:6
**either** [6] - 8:1, 18:14, 19:21, 20:5, 21:18, 28:2
**ELIZABETH** [1] - 1:12
**ended** [2] - 4:9, 4:11
**enhancement** [2] - 6:18, 7:14
**ensure** [2] - 15:21, 22:6
**entitled** [1] - 9:2
**episodes** [1] - 9:1
**estopped** [1] - 19:4
**event** [1] - 26:1
**events** [2] - 9:6, 16:19
**evidence** [8] - 6:11, 7:6, 19:4, 19:14, 20:24, 22:3, 24:4, 24:14
**exact** [1] - 13:3
**exactly** [2] - 11:7, 21:1
**example** [10] - 6:7, 6:13, 7:16, 7:23, 8:5, 8:9, 12:21, 13:9, 19:8, 19:9
**except** [1] - 20:25
**exchanges** [1] - 22:3
**exhibits** [1] - 9:24
**expand** [2] - 15:17, 15:22
**expeditiously** [1] - 17:10
**extensive** [1] - 16:1

extent [1] - 4:17

**F**

fact [4] - 10:14, 24:18, 29:1
factual [1] - 9:24
failed [1] - 4:16
fair [1] - 15:15
far [2] - 15:19, 24:14
felonies [6] - 13:15, 17:25, 18:11, 20:18, 25:2, 25:11
felony [17] - 7:10, 13:2, 13:5, 13:6, 13:11, 17:22, 17:23, 18:9, 18:19, 18:23, 20:14, 20:15, 20:18, 25:1, 25:2, 25:10
felony's [1] - 13:21
fentanyl [1] - 14:14
field [1] - 14:8
file [2] - 5:5, 28:10
filed [9] - 4:2, 4:17, 4:25, 5:2, 5:19, 25:24, 26:2, 26:3, 26:12
filing [4] - 4:5, 5:13, 6:8, 26:5
fill [1] - 3:13
finder [2] - 10:14, 10:15
fine [4] - 3:25, 6:4, 27:24, 29:11
finish [1] - 28:17
first [6] - 2:22, 9:8, 13:23, 18:6, 28:9, 28:15
fix [1] - 21:12
Floor [1] - 1:13
focus [2] - 19:1, 27:6
focused [1] - 4:12
FOR [1] - 1:1
forcible [4] - 6:18, 12:11, 17:20, 18:7
forcibly [1] - 12:21
foreclose [1] - 19:13
foregoing [1] - 30:4
form [2] - 3:13, 3:15
formal [1] - 5:3
formally [1] - 5:12
forward [3] - 17:8, 27:13, 28:15
fourth [1] - 21:25
frame [4] - 8:22, 11:19, 20:17, 23:25
framed [1] - 14:2
frames [1] - 10:10
framing [1] - 13:15
free [1] - 13:16

Friday [1] - 4:24
front [4] - 9:17, 21:18, 24:4, 24:6
full [2] - 24:4, 30:5
fully [1] - 20:11
fulsome [1] - 27:12
future [1] - 16:18

**G**

generally [1] - 20:6
given [1] - 9:11
government [33] - 2:6, 3:20, 5:23, 6:7, 6:10, 6:11, 7:19, 8:20, 10:23, 12:15, 12:17, 13:5, 13:16, 15:9, 16:10, 16:23, 19:3, 19:10, 19:13, 19:20, 19:22, 19:23, 19:25, 21:11, 22:2, 22:7, 22:20, 22:22, 23:10, 25:7, 25:17, 26:2, 29:11
government's [10] - 8:24, 9:2, 14:1, 15:18, 19:18, 20:3, 20:9, 21:5, 22:16, 23:6
grand [41] - 6:22, 7:1, 7:5, 7:13, 8:12, 8:19, 9:5, 9:9, 9:11, 9:13, 9:18, 9:23, 9:24, 9:25, 10:13, 10:25, 11:7, 11:8, 11:16, 11:20, 12:3, 12:13, 12:14, 13:4, 13:13, 14:22, 14:25, 19:6, 20:23, 22:9, 23:11, 23:20, 24:3, 24:5, 24:6, 24:12, 24:15, 25:4, 25:6, 25:9
Great [1] - 29:21
great [1] - 5:14
guess [4] - 20:2, 21:23, 25:14, 26:1
guidance [1] - 20:10
guilt [1] - 10:17

**H**

happy [3] - 5:5, 14:21, 15:3
Harris [3] - 7:18, 13:10, 13:14
Haven [4] - 1:13
hear [4] - 2:20, 5:20, 17:13, 26:18
heard [2] - 20:13
hearing [5] - 2:15,

16:5, 19:3, 22:15, 29:24
HEARING [2] - 1:4, 1:8
HELD [1] - 1:9
help [1] - 11:22
helpful [4] - 5:18, 8:24, 16:21, 24:20
hereby [1] - 30:3
herein [1] - 14:17
higher [1] - 14:12
highly [1] - 17:7
holding [1] - 16:2
Honor [19] - 2:2, 2:7, 3:5, 4:23, 9:7, 9:20, 10:6, 11:3, 11:7, 13:23, 14:4, 17:9, 20:12, 21:14, 22:10, 25:19, 26:24, 27:24, 29:12
HONORABLE [1] - 1:9
hopefully [1] - 11:22
hypothetically [3] - 12:13, 23:13, 24:22

**I**

idea [1] - 28:18
identification [1] - 13:2
identified [3] - 18:8, 22:3, 25:11
identifies [7] - 6:8, 6:11, 8:1, 8:3, 8:8, 18:12, 23:12
identify [5] - 2:5, 6:15, 7:9, 13:20, 25:2
identifying [2] - 20:19, 28:4
IDing [1] - 20:14
impeding [2] - 6:19, 12:12
implied [1] - 19:2
important [1] - 17:7
impose [1] - 5:15
IN [1] - 1:1
include [1] - 28:23
included [1] - 7:19
includes [1] - 28:21
including [1] - 12:11
indict [4] - 6:22, 7:1, 7:6, 25:4
indictable [3] - 8:20, 9:5, 12:15
indicted [7] - 7:13, 8:13, 10:1, 14:8, 22:1, 22:9, 25:6
indictment [39] - 6:13, 6:15, 6:21, 7:3, 7:9, 7:13, 7:15, 7:24,

8:11, 10:21, 10:24, 11:1, 12:17, 12:23, 13:9, 14:2, 14:20, 15:18, 15:21, 16:8, 16:20, 16:24, 16:25, 17:25, 18:3, 18:11, 18:14, 19:1, 19:25, 20:7, 21:19, 22:7, 23:12, 24:7, 24:19, 25:22, 27:7, 28:16, 29:16
individual [1] - 22:23
information [1] - 9:17
innocence [1] - 10:17
inquiry [1] - 9:18
insignificant [1] - 12:9
instructions [1] - 21:19
insufficient [1] - 14:20
intended [1] - 17:25
intends [1] - 22:8
intent [18] - 7:10, 7:14, 13:2, 13:5, 13:6, 13:11, 13:14, 13:21, 17:21, 17:23, 18:9, 18:18, 18:23, 20:15, 21:1, 24:9, 25:1, 25:10
intention [2] - 11:15, 15:16
interference [1] - 6:19
internal [1] - 12:3
interpretation [1] - 21:20
introducing [1] - 19:14
ironing [1] - 28:13
irrelevant [1] - 4:11
issue [9] - 3:17, 6:5, 10:4, 10:12, 10:18, 13:18, 16:17, 17:3, 25:25
issues [18] - 4:6, 4:10, 4:12, 4:15, 5:17, 5:24, 8:17, 11:5, 16:18, 16:23, 17:1, 26:15, 26:19, 27:17, 28:4, 28:13, 28:14, 28:25
itself [2] - 10:18, 27:15

**J**

January [1] - 10:2
job [1] - 14:6
joined [1] - 26:19
JUDGE [1] - 1:9
Judge [8] - 2:12, 3:11, 16:12, 17:16, 21:20, 28:7, 29:14, 29:23

jump [1] - 4:25
June [9] - 27:3, 27:10, 27:20, 27:21, 27:22, 27:23, 28:2
jury [41] - 2:23, 6:22, 7:1, 7:5, 7:13, 8:13, 8:19, 9:5, 9:9, 9:11, 9:18, 9:23, 9:24, 9:25, 10:13, 10:25, 11:7, 11:8, 11:16, 11:20, 12:4, 12:13, 12:14, 13:4, 13:13, 14:15, 14:22, 15:1, 19:6, 20:23, 22:9, 23:11, 23:20, 24:3, 24:5, 24:6, 24:12, 24:15, 25:4, 25:6, 25:9
jury's [2] - 9:13, 9:18

**K**

Katherine [1] - 2:8
KATHERINE [1] - 1:12
Kenyon [1] - 7:17
kind [3] - 3:2, 5:5, 14:17
kinds [2] - 14:7, 18:8
KM [1] - 8:9
knowing [2] - 7:4, 12:12

**L**

lab [1] - 14:10
laid [1] - 13:25
landscape [1] - 22:24
language [3] - 24:5, 24:11, 24:15
largely [1] - 4:13
last [3] - 4:24, 18:17, 24:13
Law [1] - 1:17
least [16] - 3:19, 3:20, 4:8, 4:18, 6:13, 7:3, 7:12, 12:8, 15:15, 16:16, 19:2, 19:20, 24:22, 25:3, 28:1, 28:12
leaves [1] - 12:12
legal [2] - 13:24, 21:18
light [3] - 28:22, 29:1
limit [2] - 15:25, 19:20
limited [5] - 6:10, 19:4, 19:22, 19:23, 22:2
line [4] - 2:4, 6:21, 8:6, 8:7
lines [1] - 22:9
literally [1] - 15:20

**look** [1] - 29:16
**looked** [1] - 4:18
**looking** [2] - 18:13, 21:5
**looks** [1] - 29:20

## M

**main** [1] - 25:8
**mandatory** [1] - 14:13
**manner** [1] - 7:22
**March** [1] - 6:8
**Maria** [1] - 2:12
**MARINA** [1] - 1:17
**material** [1] - 10:4
**materially** [1] - 11:21
**matter** [1] - 13:24
**MATTHEW** [1] - 1:5
**Matthew** [2] - 2:3, 2:13
**McKellop** [3] - 7:17, 7:23, 8:9
**mean** [7] - 13:13, 16:19, 19:17, 22:5, 23:13, 27:15, 29:2
**means** [1] - 9:23
**MEDVIN** [11] - 1:17, 2:12, 2:16, 3:10, 16:12, 22:12, 25:23, 26:9, 28:7, 29:14, 29:23
**Medvin** [28] - 1:17, 2:12, 2:14, 3:9, 4:24, 4:25, 5:11, 5:23, 9:19, 9:23, 10:4, 11:25, 15:5, 16:1, 16:5, 16:6, 17:12, 18:21, 19:12, 19:21, 22:4, 22:11, 25:20, 27:5, 27:7, 28:6, 29:13
**Medvin's** [4] - 17:2, 19:18, 23:22, 24:17
**meet** [3] - 4:4, 4:20, 29:18
**meet-and-confer** [1] - 4:20
**meeting** [1] - 29:5
**mentioned** [1] - 12:10
**MICHAEL** [1] - 1:14
**might** [4] - 12:14, 24:23, 26:25, 27:18
**mind** [1] - 2:24
**minimum** [1] - 14:13
**mismatch** [2] - 12:18, 13:7
**moot** [2] - 16:8, 17:6
**Moss** [1] - 17:16
**Moss's** [1] - 21:20
**most** [2] - 17:4, 21:4
**motion** [7] - 9:12,

16:13, 17:2, 17:4, 19:19, 22:6, 25:24
**MOTION** [2] - 1:4, 1:8
**motions** [23] - 4:2, 4:6, 4:7, 4:9, 4:16, 4:17, 4:24, 5:2, 5:6, 5:13, 5:19, 5:25, 6:2, 6:3, 15:25, 16:5, 20:10, 25:24, 26:3, 26:16, 27:1, 28:5, 28:22
**MPD** [1] - 8:10
**MS** [38] - 2:7, 2:12, 2:16, 3:5, 3:10, 4:23, 9:7, 9:20, 9:22, 10:6, 10:8, 11:3, 12:19, 13:22, 14:4, 15:10, 15:13, 15:24, 16:12, 17:9, 20:12, 20:19, 21:8, 21:14, 22:10, 22:12, 23:22, 25:12, 25:19, 25:23, 26:9, 26:24, 27:24, 28:7, 29:11, 29:14, 29:21, 29:23

## N

**N.W** [1] - 30:11
**necessarily** [2] - 13:24, 23:21
**need** [4] - 17:13, 20:9, 27:15, 28:13
**needing** [1] - 11:24, 24:16
**needs** [1] - 3:13
**New** [1] - 1:13
**new** [6] - 15:9, 15:21, 16:19, 16:25, 18:14, 28:21
**next** [2] - 16:11, 27:6
**NICHOLS** [1] - 1:9
**nonassault** [1] - 17:21
**nonopposition** [1] - 5:22
**note** [2] - 4:1, 4:18
**notes** [1] - 30:5
**nothing** [1] - 16:2
**notice** [4] - 6:25, 8:17, 28:4, 28:25
**Number** [1] - 20:14
**number** [1] - 7:16
**NW** [2] - 1:15, 1:23

## O

**object** [2] - 8:6, 8:7
**objection** [1] - 3:16
**obligation** [1] - 4:4
**obligations** [2] - 19:6,

28:23
**obviously** [6] - 5:16, 11:25, 16:7, 17:24, 23:20, 29:16
**occurred** [2] - 8:2, 19:24
**October** [1] - 30:7
**odd** [1] - 11:4
**OF** [4] - 1:1, 1:2, 1:8, 30:1
**offense** [1] - 7:2
**offenses** [3] - 7:5, 9:5, 22:1
**offer/suggestion** [1] - 20:4
**office** [1] - 2:9
**Office** [1] - 1:12
**officer** [1] - 8:9
**officers** [3] - 7:20, 8:6, 8:7
**Official** [2] - 1:22, 30:10
**OFFICIAL** [1] - 30:1
**often** [1] - 7:21
**once** [4] - 3:7, 3:8, 15:4, 28:9
**One** [1] - 20:14
**one** [15] - 3:10, 7:12, 9:16, 10:15, 12:6, 12:10, 14:8, 17:3, 17:5, 22:24, 25:24, 26:7, 27:18
**ones** [3] - 5:21, 19:25, 26:20
**open** [2] - 14:22, 29:6
**operating** [1] - 14:13
**opportunity** [1] - 27:11
**opposed** [2] - 5:7, 5:22
**oppositions** [1] - 5:21
**orally** [1] - 28:1
**order** [6] - 4:3, 4:5, 4:15, 9:10, 20:14, 27:20, 28:1, 28:21, 29:10, 29:19
**original** [1] - 16:5
**originally** [1] - 27:1
**otherwise** [2] - 19:5, 28:25
**outlined** [1] - 16:15
**outside** [1] - 19:21
**overtaken** [1] - 16:18

## P

**p.m** [10] - 1:7, 6:23, 8:3, 8:7, 12:22, 24:25, 25:1, 29:24
**page** [4] - 6:7, 6:22,

8:25
**Page** [1] - 21:5
**panoply** [1] - 22:20
**papers** [4] - 4:11, 17:15, 19:22, 22:3
**paragraph** [3] - 4:5, 4:15, 27:21
**paragraphs** [1] - 27:19
**paraphrasing** [2] - 18:22, 23:15
**part** [2] - 19:19, 28:19
**particular** [3] - 8:8, 8:24, 19:24
**particularized** [1] - 8:13
**parties** [22] - 2:4, 2:24, 4:3, 4:7, 4:12, 4:14, 4:20, 5:2, 5:16, 5:21, 16:22, 18:2, 26:15, 26:17, 26:18, 28:3, 28:12, 28:19, 28:20, 29:3, 29:7, 29:18
**pause** [2] - 9:15, 10:20
**pending** [1] - 5:25
**perhaps** [6] - 5:22, 7:4, 12:6, 15:15, 19:1, 28:3
**person** [5] - 3:3, 3:7, 3:12, 3:21, 3:23
**perspective** [4] - 5:15, 12:9, 20:9, 23:2
**physical** [1] - 17:20
**pick** [1] - 12:17
**picking** [1] - 11:1
**pierce** [1] - 9:13
**piercing** [1] - 11:8
**pinpoint** [1] - 23:3
**Plaintiff** [2] - 1:3, 1:12
**plan** [1] - 3:17
**PLC** [1] - 1:17
**pleadings** [2] - 19:12, 28:11
**point** [6] - 3:23, 5:5, 10:8, 16:7, 21:24, 25:5
**points** [1] - 12:1
**position** [6] - 11:19, 19:18, 22:16, 23:23, 24:2, 24:8
**positions** [4] - 5:3, 5:8, 17:13, 26:17
**positive** [1] - 14:8
**possibility** [1] - 27:18
**possible** [5] - 7:12, 17:10, 23:18, 25:18, 29:9
**posture** [1] - 11:4
**potent** [1] - 14:16
**potential** [3] - 16:8, 22:13, 22:14

**potentially** [1] - 11:13
**precisely** [1] - 9:9
**preliminary** [1] - 2:19
**preparation** [4] - 11:21, 11:22, 15:23, 27:8
**prepare** [1] - 16:14
**present** [1] - 15:16
**presentation** [1] - 9:24
**presented** [5] - 4:6, 4:15, 9:25, 10:13, 17:4
**presenting** [1] - 23:11
**preserve** [3] - 14:19, 14:21, 16:22
**preserved** [1] - 14:3
**pretrial** [2] - 4:2, 25:23
**pretty** [2] - 8:12, 16:1
**previously** [1] - 27:5
**primary** [1] - 20:13
**principal** [2] - 6:16, 20:8
**principally** [1] - 6:5
**problem** [6] - 12:10, 13:3, 13:6, 16:10, 21:12, 23:3
**problems** [1] - 12:9
**procedural** [1] - 11:4
**proceed** [5] - 2:15, 2:18, 3:5, 3:22, 17:10
**proceeding** [3] - 2:23, 9:10, 9:14
**proceedings** [3] - 9:13, 11:18, 30:6
**process** [4] - 4:21, 5:12, 8:17, 11:14
**produced** [2] - 9:19, 10:3
**prohibited** [1] - 17:18
**prong** [1] - 20:16
**proof** [2] - 19:20, 22:2
**propose** [2] - 29:10, 29:18
**proposing** [2] - 28:20, 29:5
**prosecuted** [1] - 7:2
**prosecuting** [1] - 14:6
**prosecution** [1] - 25:25
**prove** [8] - 8:21, 9:2, 10:11, 10:23, 12:16, 13:17, 19:5, 22:8
**proves** [1] - 13:5
**proving** [3] - 18:5, 19:23, 25:7
**prudent** [1] - 5:3
**public** [1] - 9:14
**pulled** [1] - 22:14

**purposes** [5] - 3:17, 11:12, 15:22, 19:15, 22:6
**push** [1] - 26:25
**pushed** [1] - 27:2
**put** [8] - 12:2, 16:11, 24:4, 24:13, 24:15, 24:18, 27:25, 28:15
**putting** [1] - 24:6

## Q

**questions** [2] - 12:6, 16:7
**quick** [1] - 13:22
**quickly** [1] - 11:20
**quite** [1] - 28:12
**quote** [1] - 17:19
**quote-unquote** [1] - 17:19

## R

**raise** [1] - 26:25
**raised** [1] - 11:17
**raising** [1] - 11:5
**range** [1] - 10:13
**rather** [2] - 11:1, 29:7
**rational** [1] - 29:6
**reach** [2] - 4:16, 5:16
**reached** [1] - 10:25
**reading** [1] - 4:11
**realized** [1] - 4:12
**really** [7] - 6:25, 8:17, 8:18, 9:8, 13:1, 20:2, 25:8
**reason** [1] - 4:8
**recommend** [1] - 25:17
**record** [6] - 2:5, 3:7, 3:11, 3:15, 5:3
**referenced** [1] - 10:11
**referred** [1] - 20:15
**reflected** [1] - 6:3
**reflecting** [1] - 21:6
**regard** [1] - 5:6
**reindicted** [1] - 13:20
**related** [2] - 7:7, 9:18
**relates** [1] - 16:17
**relatively** [1] - 11:20
**relevant** [4] - 2:25, 3:1, 22:8, 23:12
**remains** [1] - 24:9
**remind** [1] - 4:3
**replies** [1] - 27:11
**reply** [1] - 26:25
**report** [2] - 5:6, 5:24
**Reporter** [1] - 1:22, 1:22, 30:10
**REPORTER** [1] - 30:1

**requested** [1] - 16:12
**require** [1] - 18:7
**required** [2] - 13:25, 18:17
**requirement** [3] - 5:15, 7:1, 18:4
**reserve** [1] - 26:4
**resolve** [5] - 5:18, 26:1, 26:20, 28:9, 28:14
**resolved** [1] - 4:7
**resolving** [1] - 28:17
**resources** [3] - 14:21, 16:22
**respect** [7] - 17:17, 21:2, 21:4, 21:7, 21:13, 27:9, 27:13
**response** [3] - 13:22, 23:22, 26:25
**responses** [3] - 9:8, 13:23, 27:9
**responsive** [1] - 28:10
**result** [1] - 6:20
**review** [2] - 6:2, 26:18
**reviewed** [1] - 17:15
**reviewing** [1] - 5:20
**revised** [3] - 28:21, 29:10, 29:19
**revising** [1] - 28:20
**revision** [1] - 29:5
**risk** [1] - 12:18
**RMR** [2] - 1:22, 30:9
**room** [1] - 24:17
**Room** [2] - 1:23, 30:10
**rules** [1] - 9:11

## S

**schedule** [2] - 11:25, 28:21
**scheduled** [1] - 27:3
**scheduling** [9] - 4:2, 4:5, 4:15, 15:4, 27:20, 28:1, 28:21, 29:10, 29:19
**seal** [1] - 9:11
**sealing** [1] - 9:10
**second** [4] - 4:1, 10:8, 20:19, 21:23
**secrecy** [2] - 9:11, 11:8
**section** [1] - 20:20
**Section** [4] - 17:18, 20:16, 20:21, 20:22
**see** [8] - 4:18, 4:19, 11:17, 11:18, 18:10, 23:12, 25:21, 29:9
**seeking** [1] - 26:10
**SEFRANEK** [1] - 30:3
**Sefranek** [3] - 1:22,

30:9, 30:9
**selective** [1] - 25:25
**sense** [4] - 8:17, 27:8, 29:3, 29:4
**sensitive** [1] - 11:11
**sent** [1] - 14:10
**separate** [2] - 7:19, 8:1
**September** [1] - 10:1
**set** [2] - 2:22, 14:8
**seven** [1] - 15:11
**several** [1] - 5:1
**shall** [1] - 29:18
**shift** [1] - 24:5
**sign** [1] - 3:23
**signed** [1] - 3:22
**signs** [1] - 3:15
**simple** [1] - 17:19
**simply** [1] - 11:15
**sitting** [1] - 23:5
**slip** [1] - 27:18
**small** [1] - 2:19
**solve** [1] - 25:13
**solved** [1] - 13:8
**sometimes** [1] - 7:21
**sorry** [3] - 7:9, 15:2, 26:6
**sort** [7] - 7:7, 11:13, 13:1, 14:17, 21:24, 22:24, 23:3
**sounds** [2] - 6:2, 16:14
**South** [1] - 1:18
**specific** [2] - 8:2, 8:3
**specifically** [1] - 16:15
**specificity** [2] - 13:20, 25:17
**stage** [1] - 24:19
**stand** [1] - 27:13
**start** [4] - 2:5, 5:20, 6:6, 17:5
**started** [1] - 13:1
**statement** [2] - 4:19, 4:20
**STATES** [3] - 1:1, 1:2, 1:9
**States** [9] - 1:12, 1:23, 2:3, 2:8, 7:17, 7:18, 7:23, 13:9
**stating** [1] - 26:17
**status** [4] - 5:6, 5:24, 26:6, 27:9
**statute** [2] - 17:21, 18:8
**stay** [1] - 27:22
**stenographic** [1] - 30:5
**still** [1] - 14:13
**stipulate** [2] - 28:10,

28:16
**stipulated** [3] - 28:7, 28:8, 28:23
**stipulations** [2] - 28:8, 28:15
**streamline** [2] - 11:14, 11:17
**Street** [3] - 1:13, 1:15, 1:18
**strong** [2] - 12:6, 16:10
**stuff** [1] - 28:23
**submit** [1] - 28:4
**submits** [1] - 3:15
**substantial** [3] - 5:1, 17:4, 19:19
**substantially** [1] - 15:22
**sufficient** [1] - 8:19
**suggesting** [1] - 6:10
**suggestions** [1] - 12:7
**Suite** [1] - 1:18
**summary** [1] - 28:8
**supersede** [4] - 14:22, 15:3, 20:4, 21:11
**superseded** [3] - 10:2, 16:9, 19:9
**superseding** [16] - 11:11, 15:21, 16:11, 16:19, 16:24, 16:25, 17:25, 18:3, 18:10, 18:14, 18:25, 20:6, 21:19, 25:21, 27:6, 29:16
**supplement** [1] - 3:6
**supplemental** [1] - 6:8
**supplementary** [1] - 5:6
**support** [1] - 19:14
**suppose** [2] - 27:23, 28:2

## T

**Tamara** [3] - 1:22, 30:9, 30:9
**TAMARA** [1] - 30:3
**terms** [2] - 16:3, 20:20
**test** [2] - 14:8, 14:16
**testimony** [1] - 28:9
**testing** [1] - 24:14
**THE** [41] - 1:1, 1:1, 1:9, 2:2, 2:11, 2:14, 2:17, 3:9, 3:19, 5:14, 9:15, 9:21, 10:3, 10:7, 10:20, 12:5, 12:20, 14:1, 15:6, 15:11, 15:14, 16:6, 16:16, 17:11, 20:17, 20:25, 21:10, 21:15,

22:11, 23:2, 24:20, 25:13, 25:20, 26:7, 26:14, 27:18, 27:25, 28:18, 29:13, 29:15, 29:22
**theoretically** [1] - 23:18
**theory** [1] - 23:6
**therefore** [1] - 17:5
**thinking** [3] - 15:19, 15:20, 27:5
**third** [3] - 18:5, 18:7, 21:24
**thoughts** [1] - 23:19
**three** [13] - 6:8, 6:9, 6:11, 6:15, 6:16, 7:4, 8:25, 9:1, 9:3, 9:6, 17:17, 18:3, 21:20
**throughout** [1] - 22:12
**throwing** [2] - 8:5, 8:7
**timeline** [1] - 14:24
**today** [8] - 2:6, 6:6, 11:18, 15:1, 23:5, 25:21, 25:23, 26:22
**together** [6] - 3:8, 3:24, 5:23, 24:19, 28:13, 28:19
**tomorrow** [1] - 15:2
**took** [1] - 6:10
**tool** [1] - 25:14
**topic** [1] - 17:12
**topics** [2] - 4:8, 20:8
**TRANSCRIPT** [1] - 1:8
**transcript** [4] - 9:23, 22:14, 30:4, 30:6
**trial** [18] - 2:23, 7:2, 8:21, 11:12, 11:25, 14:9, 14:15, 21:19, 22:8, 27:2, 27:13, 27:15, 28:11, 28:22, 28:24, 29:2, 29:4
**true** [2] - 30:4, 30:5
**try** [2] - 5:15, 26:5
**trying** [3] - 14:12, 19:19, 24:18
**tunnel** [1] - 24:1
**tweak** [1] - 28:15
**two** [3] - 12:8, 13:15, 18:6

## U

**ultimately** [1] - 10:14
**under** [5] - 4:5, 8:20, 9:11, 14:13, 20:20
**understood** [4] - 10:7, 21:8, 22:10, 25:19
**UNITED** [3] - 1:1, 1:2, 1:9
**United** [9] - 1:12, 1:23,

2:3, 2:8, 7:16, 7:17, 7:23, 13:9
**unquote** [1] - 17:19
**up** [9] - 4:9, 4:11, 5:23, 6:21, 14:5, 22:9, 22:14, 26:5, 28:17
**update** [2] - 27:9, 27:12
**USAO** [1] - 1:15

**V**

**VA** [1] - 1:19
**variance** [1] - 22:17
**variations** [1] - 22:21
**various** [1] - 4:16
**venturing** [1] - 9:9
**versus** [1] - 2:3
**via** [2] - 1:4, 1:8
**victim** [1] - 8:8
**video** [7] - 2:4, 2:15, 2:18, 3:1, 3:6, 3:12, 3:16
**view** [13] - 3:4, 9:2, 13:6, 13:13, 14:1, 17:16, 18:2, 19:13, 19:19, 20:1, 21:17, 21:20
**views** [1] - 20:6
**violate** [1] - 21:21
**violated** [2] - 10:21, 23:17
**violation** [10] - 6:17, 8:2, 8:14, 13:11, 13:12, 18:5, 18:22, 19:10, 19:15, 24:24
**violations** [4] - 7:19, 7:25, 22:8, 23:9
**vis** [2] - 22:1
**vis-a-vis** [1] - 22:1
**vs** [6] - 1:4, 7:17, 7:18, 7:23, 13:9

**W**

**wait** [1] - 5:20
**waiver** [4] - 2:23, 3:21, 3:22, 3:24
**Washington** [5] - 1:5, 1:16, 1:18, 1:24, 30:11
**weapons** [1] - 7:21
**week** [6] - 15:1, 15:2, 16:11, 27:6, 27:20, 29:13
**whichever** [1] - 25:2
**wiggle** [1] - 24:17
**wish** [1] - 16:13
**wit** [3] - 12:22, 13:11, 25:1

**words** [3] - 3:12, 18:16
**works** [1] - 28:22
**wrap** [1] - 5:23

**Y**

**yourselves** [1] - 2:5

**Z**

**Zoom** [2] - 1:4, 1:8