**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 25- CR-252 (CJN)** |
| **v.** | : | |
| | : | |
| **SEAN CHARLES DUNN,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO**
**THE DEFENDANT'S MOTION TO STRIKE SURPLUSAGE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant's Motion to Strike Surplusage (ECF No. 22). The defendant's argument that resisting, opposing, impeding, intimidating, and interfering should be read entirely out of the statute for misdemeanor violations of 18 U.S.C. § 111(a) conflicts with the text and history of the statute, as well as the weight of authority. But even if the defendant is correct, those categories of prohibited conduct can still serve as a basis of conviction if the defendant's conduct also constitutes simple assault. Thus, the defendant's motion should be denied.

**BACKGROUND**

Defendant Sean Charles Dunn is charged with the misdemeanor offense of assaulting, resisting, opposing, impeding, intimidating, and interfering with a federal officer, in violation of 18 U.S.C. § 111(a)(1). *See* ECF No. 7. The charge stems from an incident that occurred on August 10, 2025. Specifically, on that date, shortly before 11:00 p.m., Metro Transit Police Department ("MTPD") officers and U.S. Customs and Border Protection ("CBP") agents were patrolling the area of 2001 14th Street NW in Washington, D.C. The group of officers included

the victim (CBP Agent G.L.) who was, at the time of the offense, an employee of the United States and acting in performance of his official duties.    The defendant began shouting at the group of officers.    He then aggressively approached the officers, while they were standing on the corner of 14th and U Streets, NW and began yelling obscenities at them.    The defendant approached G.L., stood within inches of G.L.'s face, repeatedly pointed his finger in G.L.'s face, and yelled, "Fuck you! You fucking fascists! Why are you here? I don't want you in my city!"    The defendant continued acting belligerently toward G.L. and the other officers for several minutes before crossing the street, where the defendant continued to yell obscenities at them.

At approximately 10:56 p.m., the defendant re-approached G.L. and the other officers, who were still standing on the same corner.    He again began yelling profanities at the officers.    After about two minutes of berating, the defendant stood directly in front of G.L., screamed in his face, and then threw a sandwich at him, striking G.L. in the chest.    The defendant immediately fled on foot, sprinting across the busy intersection.    The defendant's actions were captured by a civilian on the street recording on his cell phone as well as surveillance footage from the intersection, screenshots of which can be seen below.

//        //

//        //

//        //

 

**Figures 1 & 2**: DUNN throwing a sandwich at the Agent.

The officers then pursued the defendant on foot, ultimately apprehending him a block away. While being processed at the Metropolitan Police Department's Third District Station, the defendant spontaneously uttered, "I did it. I threw a sandwich." He also stated that the reason he assaulted the officer was to distract the officers so that they could not carry out their official duties, which he believed was immigration enforcement. The defendant incorrectly believed that the officers were targeting a nearby club for immigration enforcement.

On August 12, 2025, a criminal Complaint was submitted in the United States District Court for the District of Columbia, charging the defendant with one felony count of violating 18 U.S.C. § 111(a). The defendant was later charged by misdemeanor Information with one count

of violating 18 U.S.C. § 111(a) on August 27, 2025.   Trial is scheduled to begin on November 3, 2025.

On August 17, 2025, the defendant filed his motion to strike surplusage.   This timely response follows.

## LEGAL STANDARD

A court, upon a defendant's motion, may "strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d).   But a surplusage motion is "highly disfavored," *United States v. Singhal*, 876 F. Supp. 2d 82, 102 (D.D.C. 2012) (quoting *United States v. Watts*, 911 F. Supp. 538, 554 (D.D.C. 1195)), and "should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial," *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (quotations omitted); *see also United States v. Oakar*, 111 F.3d 146, 157 (D.C. Cir. 1997) ("Material that can fairly be described as 'surplus' may only be stricken [from a charging document] if it is irrelevant and prejudicial.").

## ARGUMENT

### I.    Assault is Not an Essential Element of a Misdemeanor Violation of 18 U.S.C. § 111(a)

Here, the text of Section 111 identifies six categories of prohibited conduct, covering anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes" with a federal officer engaged in official duties. 18 U.S.C. § 111(a)(1).   In addition, the clause applicable to misdemeanor violations of Section 111 references all six prohibited acts and therefore punishes that full range of prohibited conduct, not just assaults.   The history of Section 111 supports this view regarding the six categories of prohibited conduct, and the weight of authority further confirms that a defendant can commit a misdemeanor violation of Section 111(a) without committing an assault.

4

### A. The Text of the Statute Demonstrates that Assault is Not an Essential Element of the Offense

Title 18, United States Code, Section 111(a) authorizes punishment for any individual who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [*i.e.*, a federal officer] while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1).   A misdemeanor penalty is authorized where the individual's act "constitute[s] only simple assault."   *Id*.   But where the individual's "acts involve physical contact with the victim of that assault or the intent to commit another felony," he faces a term of imprisonment of "not more than 8 years."   *Id*.   Finally, an individual who "uses a deadly or dangerous weapon . . . or inflicts bodily injury" "in the commission of any acts described in subsection (a)" faces a term of imprisonment of "not more than 20 years." 18 U.S.C. § 111(b). Section 111 thus "establishes three separate crimes," namely, a misdemeanor "simple assault," a felony violation that involves either physical contact or the intent to commit another felony, or an aggravated violation that involves either a dangerous weapon or results in the infliction of bodily injury. *See United States v. Siler*, 734 F.3d 1290, 1296 (6th Cir. 2013).

Section 111 identifies six categories of prohibited conduct, covering anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes" with a federal officer engaged in official duties. 18 U.S.C. § 111(a)(1).   By using commas between the verbs and the disjunctive "or," Congress made clear its intention that each category of prohibited conduct should be separate and independent of the others. *See Horne v. Flores*, 557 U.S. 433, 454 (2009). And although all six acts require the defendant to act "forcibly," *see United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002), only one is "assault." The other five prohibited acts involve behavior that threatens federal officers or obstructs their official activities but is not necessarily "assault."

Each of Section 111's three crimes points back to these six categories. Section 111(a)'s

simple-assault clause points back to "the acts in violation of this section"; both alternatives identified in Section 111(a)'s felony clause (physical contact or felonious intent) point back to "such acts"; and Section 111(b)'s "enhanced penalty" provision points back to "any acts described in subsection (a)." 18 U.S.C. § 111. Because each clause references all six prohibited acts, each necessarily punishes that full range of prohibited conduct—not assaults alone.

If assault were an essential element of Section 111(a)'s misdemeanor clause, the "remaining five verbs [would be] superfluous." *United States v. Stands Alone*, 11 F.4th 532, 535 (7th Cir. 2021); *see generally United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F.4th 730, 738 (D.C. Cir. 2022) ("It is our duty to give effect, if possible, to every clause and word of a statute.") (citation omitted).  Indeed, the defendant's reading would read the words "resists, opposes, impedes, intimidates, or interferes" out of the statute entirely for misdemeanor offenses.

The D.C. Circuit's decision in *Arrington*, 309 F.3d at 40, is instructive on Section 111(a)'s sweep. There, the court explained that "a defendant does not violate the statute unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc." *Id*. at 44. *Arrington*'s emphasis on Section 111(a)'s disjunctive formulation supports the view that the statute punishes a broad range of conduct beyond assaults.  Similarly, if assault were the only way Section 111(a) could be violated, one would not expect the title of the statute to include "resisting" and "impeding" as well as "assaulting." *See* 18 U.S.C. § 111.

### B.  The History of the Statute Supports the Government's Reading

The history and design of Section 111 confirm its application to non-assaultive conduct. The statute's predecessor made it an offense to "forcibly resist, oppose, impede, intimidate, or interfere with any" designated federal official "while engaged in the performance of his official duties, or

[to] assault him on account of the performance of his official duties." Act of May 18, 1934, ch. 299, § 2, 48 Stat. 781 (18 U.S.C. 254 (1940)). That provision, which contained the same six offense-conduct verbs as the current version, was designed to "insur[e] the integrity of law enforcement pursuits." *United States v. Feola*, 420 U.S. 671, 682 (1975). As the Supreme Court recognized, the provision clearly "outlawed more than assaults." *Id.* at 682 n.17; *see Ladner v. United States*, 358 U.S. 169, 176 (1958) (explaining that the prior statute "ma[de] it unlawful not only to assault federal officers engaged on official duty but also forcibly to resist, oppose, impede, intimidate or interfere with such officers," noting that "[c]learly one may resist, oppose, or impede the officers or interfere with the performance of their duties without placing them in personal danger").   In *Ladner v. United States*, for example, the Court stated that "the locking of the door of a building to prevent the entry of officers intending to arrest a person within would be an act of hindrance denounced by the statute." 358 U.S. at 176. The Court noted that in 1948, Congress reordered the statute by placing the word "assaults" in front of the five other verbs.   Act of June 25, 1948, ch. 645, 62 Stat. 688 ("Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes"); *see Ladner*, 358 U.S. at 176 n.4. That "change in wording," however, "was not intended to be a substantive one." *Ladner*, 358 U.S. at 176 n.4 (discussing Reviser's Notes).   And courts therefore properly continued to uphold convictions for non-assaultive conduct under Section 111. *See United States v. Johnson*, 462 F.2d 423, 425, 429 (3d Cir. 1972) (upholding conviction for "willfully resisting, opposing, impeding and interfering with federal officers," despite jury's conclusion that defendant did not commit "assault").

Before 1994, Section 111 had a two-tier punishment structure: it punished a defendant who forcibly committed actions described by any of the six verbs with up to three years of imprisonment; but where "any such acts" involved a deadly or dangerous weapon, the maximum

sentence was ten years. 62 Stat. 688. In 1994, Congress amended the penalty structure of Section 111 to its current tripartite structure by carving out less-severe forms of the offense into their own category. It introduced the phrase "simple assault" to encompass misdemeanor violations, punishable by no more than one year in prison; "all other cases" would remain punishable by up to three years; and offenses involving a dangerous or deadly weapon would remain punishable by up to ten years, as would any act that "inflicts bodily injury."   Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 320101(a), 108 Stat. 2108; *see* Federal Judiciary Protection Act of 2002, Pub. L. No. 107-273, Div. C, Tit. I, § 11008(b), 116 Stat. 1818 (increasing second- and third-tier penalties). In so doing, however, Congress gave no indication that it intended to cut back on the statute's substantive reach by eliminating non-assaultive conduct from the statute's scope.

Congress's 2008 amendment of the statute specifically limited the second tier to cases involving physical contact or felonious intent by striking the phrase "in all other cases" from Section 111(a) and inserting "where such acts involve physical contact with the victim of that assault or the intent to commit another felony." Court Security Improvement Act of 2007, Pub. L. No. 110-177, § 208(b), 121 Stat. 2538.   In doing so, Congress necessarily understood the language of the first-tier misdemeanor provision to encompass non-assaultive conduct—like resisting arrest—that does not involve physical contact or felonious intent. Otherwise, such conduct would not be covered by the statute at all, "rip[ping] a big hole in the statutory scheme" and "leav[ing] those officials without protection for the carrying out of federal functions." *Briley*, 770 F.3d at 274; *see United States v. Williams*, 602 F.3d 313, 317 (5th Cir. 2010) ("The recent change in the statutory language . . . also supports the conclusion that § 111(a)(1) prohibits more than assault, simple or otherwise.").

Thus, for almost a century, Congress has protected federal officials in the performance of their duties by criminalizing six categories of prohibited conduct. Although over time it has altered the punishment according to the severity of the defendant's behavior—eventually settling on the current three-tier punishment structure—at no point has Congress altered the six basic categories of forcible conduct covered by the statute. Section 111(a) therefore continues to apply to any defendant who forcibly "resists, opposes, impedes, intimidates, or interferes with" a federal officer, whether or not his conduct also constitutes assault. 18 U.S.C. § 111(a); *see Ladner*, 358 U.S. at 176 n.4.

### C. The Weight of Authority Confirms that Assault is Not an Essential Element of the Offense

Four circuits that have addressed this issue have found that assault is not an essential element of all offenses under 18 U.S.C. § 111. Two circuits—the Ninth and Tenth Circuits—disagree. The Sixth Circuit, even before the 2008 amendment, recognized that common-law assault is not invariably an element of a Section 111 offense. *See United States v. Gagnon*, 553 F.3d 1021, 1024-1027 (6th Cir. 2009). Since the 2008 amendment, three other courts of appeals have addressed the interpretation of Section 111(a). In *United States v. Williams*, the Fifth Circuit recognized that "a misdemeanor conviction under § 111(a)(1) does not require underlying assaultive conduct," explaining that this reading "avoided rendering superfluous the other five forms of conduct [besides assault] proscribed by § 111(a)(1)." 602 F.3d at 317-18. In *United States v. Briley*, the Fourth Circuit likewise rejected the contention that "assault is a required element" for either a misdemeanor or felony conviction under Section 111(a)(1). 770 F.3d at 273-74 (noting that defendant's contrary reading "renders a slew of verbs in § 111(a) largely surplusage" and "wanders too far from congressional intent"). And most recently, in *United States v. Stands Alone*, the Seventh Circuit held that "assault is not an essential element of every § 111 offense."

9

11 F.4th at 536.

As to the two circuits that disagree, the Ninth Circuit's finding has been abrogated by Congress's revision of the statute in 2008. In *United States v. Chapman*, 528 F.3d 1215 (9th Cir. 2008), the Ninth Circuit considered the prior version of the statute that treated "simple assault" as a misdemeanor and "all other cases" as felonies. *Id.* at 1218 (citations omitted). In deeming the provision to require the defendant to have committed "some form of assault," *id.* at 1221, the court explicitly considered but rejected a distinction based on the presence of physical contact. "If Congress had intended to prohibit both assaultive and non-assaultive conduct and intended to distinguish between misdemeanors and felonies based solely on physical contact," the court stated, "it easily could have said so." *Id.* Congress now has spoken. As explained above, in 2008, Congress replaced the second punishment tier's "all other cases" language with language specifying that it applies "where such acts involve physical contact . . . or the intent to commit another felony." In so doing, Congress abrogated the reasoning in *Chapman. See Williams*, 602 F.3d at 317 ("Congress addressed the ambiguity identified by the Ninth Circuit by explicitly drawing the misdemeanor/felony line at physical contact.").[1]

Only the Tenth Circuit has reached a contrary conclusion. In *United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016), the court viewed a published circuit decision regarding the pre-2008 statute as compelling the conclusion that "assault is necessarily an element of any § 111(a)(1) conviction," *id.* at 1218, including a conviction under Section 111(a)'s felony clause, *id.* at 1219. The reasoning in *Wolfname*, however, is spare and unpersuasive.

---

[1] Since the 2008 amendments, the Ninth Circuit has addressed Section 111(a)'s revised language only in dicta, *see United States v. Rivera-Alonzo*, 584 F.3d 829, 833 n.2 (9th Cir. 2009), and the proper interpretation of the current version of Section 111(a) presumably remains open in that court.

Looking to this district, in *United States v. Riley Williams*, 21-cr-618-ABJ, Judge Berman Jackson instructed a jury that it could find the defendant guilty of violating Section 111(a) if "the defendant resisted, opposed, intimidated, or interfered" with a federal officer, with no reference to assault. *Williams*, No. 21-cr-618, ECF. No. 122, at 32.

The defendant's reliance on *United States v. Cua*, 657 F.Supp.3d 106 (D.D.C. 2023), is misplaced.   In *Cua*, Judge Moss divided Section 111(a) into "three categories of violations: (1) acts in violation of the statute that 'constitute only simple assault' (the 'simple-assault provision'); (2) acts in violation of the statute the 'involve physical contact with the victim of that assault' (the 'physical-contact provision'); and (3) acts in violation of the statute that 'involve . . . the intent to commit another felony' (the 'other-felony provision')."   *Id.* At 113.   Judge Moss held "that the first two provisions require an assault," while the third does not. *Id.* at 113-116.

The government disagrees with Judge Moss's interpretation of Section 111(a) and agrees with the many circuits that have held that "assault is not an essential element of every § 111 offense." *United States v. Stands Alone*, 11 F.4th 532, 535 (7th Cir. 2021); *see also United States v. Briley*, 770 F.3d 267, 273-75 (4th Cir. 2014); *United States v. Williams*, 602 F.3d 313, 315-18 (5th Cir. 2010); *United States v. Gagnon*, 553 F.3d 1021, 1024-27 (6th Cir. 2009).   As those circuits have concluded, reading Section 111(a) to require proof of an assault in all cases violates several principles of statutory interpretation.

First, "requiring assault as an essential element of *every* § 111 offense would render the remaining five verbs superfluous." *Stands Alone*, 11 F.4th at 535; *see also Briley*, 770 F.3d at 274 ("Briley's reading would render five of those six words -- all but 'assault' -- inoperative with respect to both the misdemeanor and the 'physical contact' felony."), *Williams*, 602 F.3d at 317 ("interpreting § 111(a)(1) as requiring an underlying assault for a defendant to be convicted would

render meaningless the five forms of non-assaultive conduct that are plainly proscribed by the statute."), *Gagnon*, 553 F.3d at 1026 ("the fatal problem with this reading is that it makes a great deal of what § 111 does say entirely meaningless").

Second, Judge Moss's approach "wanders too far from congressional intent" and "rips a big hole in the statutory scheme. Although his reading largely preserves the protections for the physical safety of federal officials, it leaves those officials without protection for the carrying out of federal functions. It misses the crucial point that § 111 safeguards not only physical safety, but also functional integrity." *Briley*, 770 F.3d at 274 (citing *United States v. Feola*, 420 U.S. 671, 678-79 (1975)); *see also Williams*, 602 F.3d at 317 (explaining that the government's "approach is more consonant with the dual purpose of the statute, which, the Supreme Court has noted, is not simply to protect federal officers by punishing assault, but also to 'deter interference with federal law enforcement activities' and ensure the integrity of federal operations by punishing obstruction and other forms of resistance") (quoting *Feola*, 420 U.S. at 678), *Gagnon*, 553 F.3d at 1026 ("Congress's drafting makes clear that § 111's purpose is to protect federal officers and certain employees from a broader range of harmful conduct than just common-law assault. If Congress meant only assault it could have said only assault[.]").

Third, Judge Moss's approach "produces an absurd result. His reading would allow an individual to commit an array of forcible acts against federal officials performing government functions without criminal consequence. That person could use force to resist federal officials, to oppose them, to impede them, to intimidate them, and to interfere with them -- and yet escape the reach of § 111." *Briley*, 770 F.3d at 274; *see also Stands Alone*, 11 F.4th at 536 ("We agree with this point.").

Thus, the defendant's argument that misdemeanor violations of Section 111(a) are limited

to instances of assault is contradicted by the text, history, and weight of authority.   His motion should be denied.

## II.    Resisting, Opposing, Impeding, Intimidating, and Interfering Are Not Surplusage

Because, as explained above, "resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing]" are all valid bases for a misdemeanor conviction under Section 111(a) even without proof of simple assault, there is no basis to strike these additional five areas of prohibited conduct from the Information.   But even if simple assault is an essential element of a misdemeanor violation of Section 111(a), "resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing]" is still not surplusage because a defendant can still commit a misdemeanor violation of Section 111(a) in these ways so long as the act constitutes simple assault.   Section 111(a)'s simple-assault clause refers back to "the acts in violation of this section," that is, the prohibited conduct of forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering.   The defendant's reading would, again, read the words "resists, opposes, impedes, intimidates, or interferes" out of the statute entirely for misdemeanor offenses.   Thus, the defendant cannot carry his heavy burden to show that "it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *Rezaq*, 134 F.3d at 1134 (quotation omitted).   For example, here, the defendant's stated reason for throwing the sandwich at G.L. was to interfere with the officers' carrying out their official duties, which he incorrectly believed was immigration enforcement at a nearby night club.   Thus, one way he violated Section 111(a) was by forcefully interfering with G.L.'s official duties, and the manner by which he did so constituted simple assault regardless of whether such an assault is required.   Because the Information properly alleges that the defendant "did forcibly assault, resist, oppose, impede, intimidate, and interfere with" G.L. while he was performing his official duties, there is no basis to strike any of this prohibited conduct from the Information.

13

### III.     Resisting, Opposing, Impeding, Intimidating, and Interfering Can Serve as a Basis for Conviction, So the Government Should Be Permitted to Argue Them

Because "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing]" are all valid bases for a misdemeanor conviction of Section 111(a) even without proof of simple assault, the Court should permit the Government to argue that each of these types of conduct can serve as the basis of the defendant's conviction.   But even if the Court disagrees and requires proof of simple assault, the Government should still be permitted to argue that the defendant can be convicted based on any of the categories of prohibited conduct so long as those violations constitute simple assault.   It is only if "assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing]" are entirely inapplicable to misdemeanor violations of Section 111(a) that narrowing the Government's arguments may be appropriate.[2]   But for the reasons explained above, the defendant's argument should be rejected, and the Government, therefore, should be permitted to argue that the defendant can be convicted based on any category of prohibited conduct listed in Section 111(a).

---

[2] The defendant bases his arguments on Federal Rule of Evidence 403, which permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by [certain dangers]."   Because the arguments of Counsel are not evidence, Rule 403 does not support the defendant's position.   Nevertheless, should the Court rule that certain theories of conviction are impermissible, the Government agrees that it will not argue those theories to the jury.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court deny the defendant's Motion to Strike Surplusage.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ John Parron*
Michael C. DiLorenzo (MD Bar # 931214 0189)
John Parron (PA Bar # 324503 / NY Bar # 5808522)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C.   20530
202-252-7650
202-252-6885
Michael.Dilorenzo@usdoj.gov
John.Parron@usdoj.gov

Dated: October 27, 2025