**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 25- CR-252 (CJN)** |
| **v.** | : | |
| | : | |
| **SEAN CHARLES DUNN,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO
THE DEFENDANT'S MOTION TO DISMISS THE INFORMATION
FOR VINDICTIVE AND SELECTIVE PROSECUTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant's Motion to Dismiss the Information for Vindictive and Selective Prosecution (ECF No. 20). Ignoring the assault, the defendant attempts to focus on his words alone, seeking to dismiss his case by erroneously alleging that he was prosecuted because he holds certain viewpoints. But holding certain viewpoints does not provide a license to assault federal officers. The defendant is being prosecuted for the obvious reason that he was recorded throwing a sandwich at a federal officer at point-blank range. His motion fails to demonstrate any discriminatory effect or discriminatory purpose in his prosecution, or any vindictiveness. Indeed, he cannot identify any person who is similarly situated, but was not prosecuted. And the evidence that he points to as proof of a discriminatory purpose shows only the Government's emphasis on protecting law enforcement officers who are supporting public safety in the District of Columbia. Accordingly, the defendant's motion to dismiss should be denied.

## BACKGROUND

Defendant Sean Charles Dunn is charged with assaulting, resisting, opposing, impeding, intimidating, and interfering with a federal officer, in violation of 18 U.S.C. § 111(a)(1).  *See* ECF No. 7.  The charge stems from an incident that occurred on August 10, 2025.  Specifically, on that date, shortly before 11:00 p.m., Metro Transit Police Department ("MTPD") officers and U.S. Customs and Border Protection ("CBP") agents were patrolling the area of 2001 14th Street NW in Washington, D.C.  The group of officers included the victim (CBP Agent G.L.) who was, at the time of the offense, an employee of the United States and acting in performance of his official duties.  The defendant began shouting at the group of officers.  He then aggressively approached the officers, while they were standing on the corner of 14th and U Streets NW and began yelling obscenities at them.  The defendant approached G.L., stood within inches of G.L.'s face, repeatedly pointed his finger in G.L.'s face, and yelled, "Fuck you! You fucking fascists! Why are you here? I don't want you in my city!"  The defendant continued acting belligerently toward G.L. and the other officers for several minutes before crossing the street, where the defendant continued to yell obscenities at them.

At approximately 10:56 p.m., the defendant re-approached G.L. and the other officers, who were still standing on the same corner.  He again began yelling profanities at the officers.  After about two minutes of berating, the defendant stood directly in front of G.L., screamed in his face, and then threw a sandwich at him, striking G.L. in the chest.  The defendant immediately fled on foot, sprinting across the busy intersection.  The defendant's actions were captured by a civilian on the street recording on his cell phone as well as surveillance footage from the intersection, screenshots of which can be seen below.

2

 

**Figures 1 & 2**: DUNN throwing a sandwich at the Agent.

The officers then pursued the defendant on foot, ultimately apprehending him a block away.   While being processed at the Metropolitan Police Department's Third District Station, the defendant spontaneously uttered, "I did it.   I threw a sandwich."   He also stated that the reason he assaulted the officer was to distract the officers so that they could not carry out their official duties, which he believed was immigration enforcement.   The defendant incorrectly believed that the officers were targeting a nearby club for immigration enforcement.

On August 11, 2025, the day after the defendant's arrest, his case was presented to the Superior Court Division of the U.S. Attorney's Office for prosecution.   On that same day, the case was referred for prosecution to the Criminal Division.   The very next day, on August 12, 2025, a

criminal Complaint was submitted in the United States District Court for the District of Columbia, charging the defendant with one count of violating 18 U.S.C. § 111(a), Assaulting, Resisting, or Impeding Certain Officers or Employees.   The submission was assigned to a Magistrate Judge on August 13, 2025, and signed on the same day.   Later that evening and into the early morning hours of August 14, 2025, the defendant was arrested at his home on that an arrest warrant for that Complaint.

On August 27, 2025, the defendant was charged by misdemeanor Information with one count of violating 18 U.S.C. 111(a).   Trial is scheduled to begin on November 3, 2025.

On October 17, 2025, the defendant filed his motion to dismiss the information for vindictive and selective prosecution erroneously alleging that the defendant is being prosecuted for his viewpoint.   ECF No. 20.   This timely response follows.

## <u>LEGAL STANDARD</u>

"In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). Once a discretionary prosecutorial decision has been made, it is subject to a "'presumption of regularity.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)); *see also United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (holding that prosecutor charging "decisions are presumed to be proper absent clear evidence to the contrary" (citing *Armstrong*, 517 U.S. at 464)). In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring . . . generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Prosecutorial "discretion is essential to the criminal justice process," and a

defendant thus must show "exceptionally clear proof" of an improper motive before the court will infer that the discretion has been abused. *McClesky v. Kemp*, 481 U.S. 279, 297 (1987).

### ***Selective Prosecution***

A defendant seeking to establish selective prosecution must overcome the presumption of regularity by providing "clear evidence" that the government's charging decision "had a discriminatory effect" and "was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 464-65 (quotations omitted). This burden is a "demanding" standard, as it was intended to be, because it necessarily "asks a court to exercise judicial power over a 'special province' of the Executive." *Id.* at 463-64.

**First**, to demonstrate a "discriminatory effect," a defendant must show that "similarly situated individuals" were not prosecuted. *Id.* at 464.   A person has "engaged in similar conduct," and is therefore "similarly situated" for purposes of a selective prosecution claim, *United States v. Blackley*, 986 F. Supp. 616, 617 (D.D.C. 1997), "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them," *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). Such legitimate prosecutorial factors include, among other things, the defendant's "relative culpability" and "the strength of the case against particular defendants." *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009). Stated differently, a person is "similarly situated" for selective prosecution purposes only if he "committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant."

*United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000); *see also United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (same). This analysis is necessarily sensitive not only to the nature of the criminal conduct but the precise way in which the crime was carried out.  Accordingly, courts look to the specific factual allegations at hand when assessing selective prosecution claims. *See, e.g.*, *Smith*, 231 F.3d at 811 ("[F]or [the defendants] to establish selective prosecution, they must show that there are other individuals who voted twice or more in a federal election by applying for and casting fraudulent absentee ballots, *and* who forged the voter's signature or knowingly gave false information on a ballot affidavit or application, *and* that the voter whose signature those individuals signed denied voting, *and* against whom the government had evidence that was as strong as the evidence it had against [the defendants].").

    **Second**, to show a "discriminatory purpose," a defendant must demonstrate "that discriminatory intent was a 'motivating factor in the decision' to enforce the criminal law against the defendant." *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (citation omitted); *see also Wayte*, 470 U.S. at 610 ("Discriminatory purpose implies more than intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of',' and not mere 'in spite of,' its adverse effects on an identifiable group." (cleaned up) (citation omitted)).[1]

---

[1] The D.C. Circuit in *Frederick Douglass Foundation, Inc. v. District of Columbia*, held that discriminatory intent is not required in a selective prosecution claim based on viewpoint discrimination under the First Amendment.  82 F.4th 1122, 1144-45 (D.C. Cir. 2023).  The defendant recognizes this, but contends there is discriminatory intent here anyways, which, as shown below, is inaccurate.  And, of course, to the extent the defendant's selective prosecution claim is based on anything other than the First Amendment, discriminatory intent is required.  *See Alcaraz-Arellano*, 441 F.3d at 1264.

*Vindictive Prosecution*

The vindictive prosecution doctrine "precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (quoting *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001)); *see also United States v. Meadows*, 867 F.3d 1305, 1311 (D.C. Cir. 2017) (same).   As has been noted with respect to the presumption of regularity, "prosecutors have broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *Slatten*, 865 F.3d at 799. "Thus, to succeed on a claim of vindictive prosecution, a defendant must establish that the increased charge" or other punitive prosecutorial action "was 'brought *solely* to 'penalize' [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *Id.* (quoting *Goodwin*, 457 U.S. at 380 n.12).

A defendant can show "actual vindictiveness" by presenting "'objective evidence' that the prosecutor's actions were designed to punish a defendant for asserting his legal rights." *Maddox*, 238 F.3d at 446 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). "Such a showing is normally 'exceedingly difficult to make.'" *Id.* (quoting *Meyer*, 810 F.2d at 1245); *see also Meadows*, 867 F.3d at 1311 (same). Specifically, a defendant "must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) [the defendant] would not have been prosecuted except for the animus." *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (quoting *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)).

A defendant can establish a rebuttable "presumption of vindictiveness" by pointing to a sequence of events that establishes "a realistic likelihood of 'vindictiveness'" that would be

"applicable in all cases." *Goodwin*, 457 U.S. at 381, 384; *see also Blackledge v. Perry*, 417 U.S. 21, 27 (1974). Such a "realistic likelihood" typically occurs only in a narrow set of circumstances, where a defendant exercises a right and the prosecutor responds by "upping the ante," *i.e.*, increasing the severity of the charges the defendant is facing, in a manner that would be likely to deter other defendants from exercising a similar right under the circumstances. *Blackledge*, 417 U.S. at 27-28; *see also Goodwin*, 457 U.S. at 384. Even then, the mere possibility of vindictiveness is insufficient to trigger a presumption; instead, a court should consider "the timing of the prosecutor's actions" as well as the "nature of the right" that the defendant has exercised. *Goodwin*, 457 U.S. at 381-82. Thus, for example, "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision," since the latter necessarily occurs at a time when "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Id.* at 381. Accordingly, the concerns animating the presumption typically arise only when the defendant's exercise of a right "require[s] duplicative expenditures of prosecutorial resources," challenges a decision in which the prosecutor has a "personal stake" that would prompt him to engage in "self-vindication," or triggers an "institutional bias" against the exercise of the right. *Id.* at 383. In the rare cases when a presumption of vindictiveness applies, the Government may rebut it by presenting "objective evidence that its motive in prosecuting the defendant was not vindictive." *Safavian*, 649 F.3d at 692.

### *Discovery*

To obtain discovery in support of a claim of selective or vindictive prosecution, the defendant must meet a standard that is "correspondingly rigorous" and that "should itself be a significant barrier to the litigation of insubstantial claims," as such discovery "will divert

prosecutors' resources and may disclose the Government's prosecutorial strategy." *Armstrong*, 517 U.S. at 464, 468; *see also United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) (summarily reversing unfounded selective-prosecution discovery order which itself "threaten[ed] the performance of a core executive constitutional function") (quotations omitted). Under that standard, the defendant must put forward "some evidence tending to show the existence of the essential elements of the defense." *Armstrong*, 517 U.S. at 468 (citation omitted).

A defendant is not entitled to discovery on a claim of selective prosecution absent a "colorable showing," *Id.* at 471, on both prongs of the selective prosecution standard. *United States v. Blackley*, 986 F. Supp. 616, 617-18 (D.D.C. 1997). If a defendant fails to make the requisite showing as to either prong, he is not entitled to discovery, much less to the extreme remedy of dismissal of the indictment. *See Bass*, 536 U.S. at 863; *Att'y Gen. of the United States v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982). Notably, the *Armstrong* standard is more stringent than the materiality standard for ordinary discovery in Federal Rule of Criminal Procedure 16(a)(1)(E). *United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000).

The standard for obtaining discovery for a vindictive prosecution claim is analogous to the "rigorous" standard for selective prosecution. *See United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 175 (D.D.C. 2020) (citing *Armstrong*, 517 U.S. at 464). Accordingly, a defendant is not entitled to discovery on a claim of vindictive prosecution unless he can present "some objective evidence tending to establish the vindictive prosecution defense." *Id.*

## **ARGUMENT**

### I.    **The Defendant Has Not Established a Claim of Selective Prosecution**

Ignoring the physical contact at issue, the defendant asserts that he has been selectively prosecuted for his political viewpoints. But the defendant has not even come close to establishing

such a claim.   His attempt to establish a discriminatory effect falls flat because he fails to identify any similarly situated person who committed the same basic crime in the same manner.   The defendant either fails to identify any comparator, or the ones he does identify are simply inapposite. Further, the defendant's attempt to show a discriminatory purpose—to the extent his claim requires it—is similarly unsupported.   None of the evidence he raises suggests—let alone establishes by clear evidence—that he was selectively prosecuted.   His motion should be denied.

### A. The Defendant Has Not Identified a Comparator and Thus Has Not Established Discriminatory Effect

The defendant has failed to show there are no "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions," *Rossotti*, 211 F.3d at 145 (quoting *Hastings*, 126 F.3d at 315), to support his claim of selective prosecution.   The defendant either fails to identify a comparator, or identifies those who are not comparators at all.   He seeks to compare his prosecution to those who he asserts were "apolitical" and engaged in similar conduct.   But he identifies no individual who falls into that category.   He also seeks to compare himself to January 6 defendants, many of whom were prosecuted, convicted, and served sentences. He attempts to compare himself to them because their cases were pardoned or commuted, but he provides no basis for considering a pardoned defendant or one whose sentence was commuted as a comparator for a selective prosecution claim.   The defendant's selective prosecution claim fails because he cannot identify a similarly situated comparator who was not prosecuted, and thus fails to show clear evidence of any discriminatory effect from his prosecution.

### 1. The Defendant Identifies No "Apolitical" Individual Engaged in Similar Conduct

The defendant contends that supposed "apolitical individuals who have engaged in similarly, relatively minor conduct without consequence," are examples of similarly situated offenders who escaped prosecution. (Def.'s Mot. at 11). But the defendant does not identify a single person who falls into this category. Instead, he just assumes that such an offender must exist and must not have been prosecuted. He says that those who *were* prosecuted used objects capable of causing injury, (Def.'s Mot. at 10-11), but not only does this overlook the various cases that have been prosecuted for spitting on a federal officer,[2] but comparing the defendant to those who *have* been prosecuted is not the relevant inquiry. *See Irish People. Inc.*, 684 F.2d at 946 ("Defendant must make a colorable showing that he has been especially singled out, that there exist persons similarly situated who have *not* been prosecuted." (emphasis added)).

The defendant's inability to identify any comparator is not just a technical deficiency, but it fundamentally frustrates the purpose of finding a comparator in the first place. A comparator must have "committed the same basic crime in substantially the same manner as the defendant," *Smith*, 231 F.3d at 810, such that there are "no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them," *Rossotti*, 211 F.3d at 145 (quoting *Hastings*, 126 F.3d at 315). Without an identified comparator, the defendant cannot make the requisite clear showing that legitimate prosecutorial factors do not justify a different course of action in this case. Thus, because the defendant fails to identify any individual who committed the same basic crime in substantially the same manner and was not prosecuted, his

---

[2] *See, e.g.*, *United States v. Lehi*, 446 F. App'x 96, 100 (10th Cir. 2011); *United States v. Frizzi*, 491 F.2d 1231, 1232 (1st Cir. 1974); *United States v. Stoddard*, 407 F. App'x 231, 233 (9th Cir. 2011); *United States v. Emily Gabriella Sommer*, No. 25-cr-164-JMC (D.D.C.).

motion fails from the outset.

### 2. January 6 Defendants Are Not Comparable to the Defendant

The defendant next attempts to compare himself to January 6 defendants who were pardoned or had their sentences commuted. But this attempt misses the mark because those defendants were charged and prosecuted, and in many instances convicted and served sentences— the same process the defendant claims was selectively brought to bear against him.[3] As explained above, a comparison to others who *have* been prosecuted fails to satisfy the defendant's heavy burden of establishing discriminatory effect. *See Irish People. Inc.*, 684 F.2d at 946.

The defendant also raises the pardons and commutations for the January 6 defendants as a reason why they are comparable to him. (Def.'s Mot. at 12). But "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 276 (1998) (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)). Putting aside the obvious factual mismatch of the proposed comparators, the defendant provides no legal authority to support using a pardoned defendant as a comparator in a selective prosecution claim. *Cf. United States v. McCord*, 509 F.2d 334, 350 n.59 (D.C. Cir. 1974) (expressing no opinion on whether a selective prosecution claim based on a comparator that was pardoned was "non-frivolous," but recognizing that "[i]t would require an extension of existing case law on selective prosecution to novel circumstances"). The defendant's comparison to prosecuted defendants who were pardoned or had their sentences commuted is inapposite to his selective prosecution claim.

---

[3] Indeed, the three defendants the defendant contends are similarly situated all faced federal prosecution until they were pardoned. *See United States v. Lang*, No. 21-cr-53-CJN (D.D.C. Jan. 21, 2025), ECF No. 167 (moving to dismiss based on presidential pardon); *United States v. Boughner*, No. 22-cr-20-TSC (D.D.C. Jan. 21, 2025), ECF No. 72 (same); *United States v. Ball*, No. 23-cr-160-RC (D.D.C. Jan. 21, 2025) (same).

His claim fails.

### B.  The Defendant Has Not Shown Any Discriminatory Purpose

To the extent the defendant's claim requires it, the defendant fails to show that his prosecution was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, or was designed to prevent or paralyze his exercise of constitutional rights." *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (internal citations and quotation marks omitted). The defendant appears to contend that he is being selectively prosecuted because his political viewpoints conflicted with the Government's.  (Def.'s Mot. at 16, 18).   But that claim is unsupported by the record.

The defendant contends that the nature of the charges combined with the timing of the Government's charging decision support an inference of discrimination.  (Def.'s Mot. at 17). The defendant has failed to demonstrate anything novel or extraordinary about the charging decision here.   And there is nothing unprecedented about charging a defendant for conduct that fits squarely within the statute, here 18 U.S.C. § 111(a).

Nor is there anything unusual about the timing of the Government's charging decision in this case.   Here, the defendant was arrested on August 10, 2025, and the case was presented for prosecution in D.C. Superior Court on August 11, 2025.   On that same day, the case was referred for prosecution by the Criminal Division.   There is nothing unusual about that process.   On August 12, 2025, the following day, a criminal Complaint was submitted in the United States District Court for the District of Columbia, which was assigned to a Magistrate Judge on August 13, 2025, and signed on the same day.   The defendant offers nothing to suggest that this was a departure from normal procedures.

In an attempt to inject a discriminatory purpose into his prosecution, the defendant points

to comments made by Attorney General Bondi and U.S. Attorney Pirro after the decision to charge the defendant was already made, and after charges were already filed.  Far from evidence of a discriminatory purpose, these comments confirm the Government's emphasis on protecting law enforcement from assaults like the one the defendant committed here, and deterring those who assault law enforcement who are supporting public safety in the District of Columbia.  The defendant also characterizes his dismissal from his employment position at the Department of Justice as evidence of a discriminatory purpose, but he does not explain how removing an employee of the Department of Justice who is actively being prosecuted for assault on a federal officer is unreasonable, let alone proof of discrimination against his particular "exercise of constitutional rights."  *Mangieri*, 694 F.2d at 1273.

At bottom, the defendant provides nothing more than personal belief and speculative conclusions to support his claim of selective prosecution.  He is unable to show by any clear evidence that he was treated differently than similarly situated defendants, or with any discriminatory purpose in his prosecution, or based on his viewpoint.   His motion to dismiss for selective prosecution should be denied.

## II.    The Defendant's Prosecutorial Vindictiveness Claim Fails

The defendant cannot make the requisite showing that this prosecution was "brought *solely* to 'penalize' [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 380 n.12).   The defendant contends that his prosecution is meant to punish him, allegedly because of his opposition to certain law enforcement policies.   And as the defendant admits, this claim largely "overlaps with [his] selective prosecution claim."  (Def.'s Mot. at 21).   Thus, this claim should fail for the same reasons explained above.

14

The additional areas the defendant emphasizes do nothing to support his claim of vindictive prosecution.  (Def.'s Mot at 21-22).  The defendant, while an employee of the Department of Justice, assaulted a federal officer who was performing his official duties to support public safety in the District of Columbia.  His invocation of statements made after the charging decision that are critical of those who assault law enforcement officers—particularly by a then-Department of Justice employee—does nothing to suggest that he has been singled out or prosecuted for some vindictive purpose.  Indeed, read in context, Attorney General Bondi's statements affirm the Government's emphasis on protecting law enforcement officers, and the frustration that someone within the Department of Justice would assault a federal law enforcement officer.[4]  The same is true of U.S. Attorney Pirro's statements.[5]  These statement show no vindictive purpose, but rather demonstrate a legitimate law enforcement reason for the defendant's prosecution.

Nor does the defendant's arrest suggest any kind of vindictiveness.  His arrest happened after the defendant was already charged with assaulting a federal officer, so there is little that can be gleaned from it about why the defendant was prosecuted, and certainly nothing that can be considered clear evidence of vindictiveness.  In addition, before his arrest, the defendant's last contact with law enforcement involved him assaulting a federal officer by throwing a projectile at him and then attempting to flee across a busy intersection.   The defendant's arrest does not support a claim of vindictive prosecution, and therefore his motion should be denied.

---

[4]  Attorney General Pamela Bondi (@AGPamBondi), X (Aug. 14, 2025, at 11:09 A.M.), https://x.com/AGPamBondi/status/1956010229348413694 ("If you touch any law enforcement officer, we will come after you. . . . You will NOT work in this administration while disrespecting our government and law enforcement.").

[5]  Jeanine Pirro (@JudgeJeanine), X (Aug. 13, 2025, 2:54 PM), https://x.com/JudgeJeanine/status/1955704405161808286 ("Assault a law enforcement officer, and you'll be prosecuted.").

### III.     There Is No Basis For Discovery

The defendant has not met the "rigorous" standard required to be entitled to discovery on his selective or vindictive prosecution claims.  *Armstrong*, 517 U.S. at 464, 468.   As explained above, the defendant's claims of selective and vindictive prosecution are meritless.   He has identified no valid comparator, he has shown no discriminatory purpose, and he has provided no legitimate evidence of vindictiveness.   All the evidence he provides demonstrates that he was prosecuted because he assaulted a federal law enforcement officer who was working to support public safety in the District of Columbia.   To grant discovery in this case would do exactly what the rigorous standard for discovery was designed to prevent: diverting prosecutorial resources for insubstantial claims and intruding into the prosecution's charging decisions.  *Id.* at 468.   The defendant's request for discovery should be denied.[6]

---

[6] The defendant states that the Government refused his six discovery requests related to its charging decision and social media posts.  (Def.'s Mot. at 23).   That is inaccurate.   The Government asked the defendant to provide authority supporting the relevance and discoverability of his requests.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court deny

the defendant's motion to dismiss the information for vindictive or selective prosecution.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ John Parron*
Michael C. DiLorenzo (MD Bar # 931214 0189)
John Parron (PA Bar # 324503 / NY Bar # 5808522)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C.   20530
202-252-7650
202-252-6885
Michael.Dilorenzo@usdoj.gov
John.Parron@usdoj.gov

Dated: October 27, 2025

17