## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**SEAN CHARLES DUNN,**<br>**Defendant.** | **CASE NO. 1:25-CR-00252 (CJN)** |

## DEFENDANT SEAN DUNN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE INFORMATION FOR VINDICTIVE AND SELECTIVE PROSECUTION

Sabrina P. Shroff (D.D.C. Bar No. NY0481)
80 Broad Street, 19th Floor
New York, NY 10004
Tel: (646) 763-1490
sabrinashroff@gmail.com

Julia Gatto (*Pro Hac Vice*)
STEPTOE LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
jgatto@steptoe.com

Nicholas Silverman (D.D.C. Bar No. 1014377)
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
nsilverman@steptoe.com

*Counsel for Defendant*
*Sean Charles Dunn*

Dated: October 29, 2025

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

A.    There is Clear Evidence of Selective and Vindictive Prosecution .............. 2

    1.    Both Comparator Groups Establish Unconstitutionally Selective
        Action ................................................................................................. 2

        a.    Low-Level Apolitical Offenders ............................................. 3

        b.    The January 6 Defendants ..................................................... 6

    2.    The Government Fails to Rebut the Clear Showing of
        Discriminatory and Vindictive Purpose ............................................ 9

B.    At a Minimum, Discovery and an Evidentiary Hearing Are Warranted .. 13

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Branch Ministries v. Rossotti,*
970 F. Supp. 11 (D.D.C. 1997) ................................................................................... 11

*Dep't of Com. v. New York,*
588 U.S. 752 (2019) ...................................................................................................... 4

*Frederick Douglass Found., Inc. v. District of Columbia,*
82 F.4th 1122 (D.C. Cir. 2023) ............................................................................... 7, 9

*Maddox v. Elzie,*
238 F.3d 437 (D.C. Cir. 2001) ................................................................................... 9

*Nat'l Endowment for Democracy v. United States,*
No. 25-cv-00648, 2025 WL 2305477 (D.D.C. Aug. 11, 2025) ..................................... 4

*Pers. Administrator of Mass. v. Feeney,*
442 U.S. 256 (1979) .................................................................................................... 11

*United States v. Abrego Garcia,*
No. 3:25-cr-00115, slip op. (M.D. Tenn. Oct. 3, 2025 ................................................. 14

*United States v. Adams,*
870 F.2d 1140 (6th Cir. 1989) .............................................................................. 13, 14

*United States v. Ball,*
No. 23-cr-160 (D.D.C. Apr. 27, 2023), Dkt. No. 1-1 ................................................... 8

*United States v. Barnes,*
No. 18-MJ-54 (RMM), 2019 WL 5538550 (D.D.C. Oct. 24, 2019), *aff'd,*
481 F. Supp. 3d 15 (D.D.C. 2020) ............................................................................. 12

*United States v. Boughner,*
No. 22-cr-20 (D.D.C. Dec. 19, 2021), Dkt. No. 9 ......................................................... 8

*United States v. Esquivel,*
Case No. 1:25-mj-162-ZMF (D.D.C. Sept. 18, 2025), Dkt. No. 12 ............................... 4

*United States v. Heidecke,*
900 F.2d 1155 (7th Cir. 1990) ................................................................................... 13

*United States v. Jones,*
159 F.3d 969 (6th Cir. 1998) ..................................................................................... 13

*United States v. LaDeau,*
    734 F.3d 561 (6th Cir. 2023)................................................................ 14

*United States v. Lang,*
    No. 21-cr-53 (D.D.C. Feb. 21, 2024), Dkt. No. 127........................... 8

*United States v. Rodella,*
    59 F. Supp. 3d 1331 (D.N.M. 2014) ................................................. 12

*United States v. Safavian,*
    644 F. Supp. 2d 1 (D.D.C. 2009), *aff'd,* 649 F.3d 688 (D.C. Cir. 2011) ...................... 9

*United States v. Stanchich,*
    550 F.2d 1294 (2d Cir. 1977) ............................................................. 4

*United States v. Steele,*
    461 F.2d 1148 (9th Cir. 1972).......................................................... 5, 6

*United States v. Washington,*
    705 F.2d 489 (D.C. Cir. 1983) ......................................................... 13

*United States v. Zakhari,*
    85 F.4th 367 (6th Cir. 2023) ............................................................ 14

*Wayte v. United States,*
    470 U.S. 598 (1985)........................................................................... 11

**Statutes**

18 U.S.C. § 111 ................................................................................... 1, 4, 10

**Other Authorities**

DOJ Justice Manual §§ 1-7.610, 1-7.610(B) ....................................... 11

Oliver Willis, *Freedom fighter wields sub sandwich against Trump's DC
    gestapo*, Daily Kos (Aug. 12, 2025 at 12:00 PM),
    https://www.dailykos.com/stories/2025/8/12/2338011/-Freedom-fighter-
    wields-sub-sandwich-against-Trump-s-DC-gestapo................................... 10

Presidential Documents. Addresses and Remarks,
    https://www.govinfo.gov/content/pkg/DCPD-202500295/pdf/DCPD-
    202500295.pdf.................................................................................... 6

## INTRODUCTION

Mr. Dunn's motion to dismiss rests on a straightforward and unmistakable reality: he was singled out for federal prosecution under 18 U.S.C. § 111 not because of the nature of his alleged conduct—throwing a soft object that caused no injury—but because his outspoken, viral critique of the current administration's policing and immigration policies made him a political target.

In his opening brief, Mr. Dunn set forth substantial evidence establishing that his prosecution is both selective and vindictive. He identified not one, but two, groups of similarly situated individuals with different political views who escaped federal prosecution, including individuals accused of similar low-level offenses who never face federal charges and January 6 defendants who, among other violent acts, swung baseball bats, hurled explosives, and deployed chemical irritants at law enforcement and yet escaped prosecution. He also detailed a series of eye-popping actions surrounding his arrest and prosecution that, individually or collectively, make explicit the authorities' political animus: among others, public, politicized attacks by Attorney General Bondi and U.S. Attorney Pirro, including U.S. Attorney Pirro's online taunt about where Mr. Dunn should "stick [his] Subway sandwich"; the orchestrated and videotaped militarized arrest of Mr. Dunn; and the President's worldwide broadcast of that arrest from his official White House account.

Instead of confronting this record, the government's Opposition merely dodges it. It concedes that low-level offenders alleged to have committed comparable assaults are rarely, if ever, prosecuted in federal court, yet faults Mr. Dunn for not producing an example that, by its own admission, does not exist. It does not dispute that January 6 defendants are similarly situated and engaged in far more serious conduct yet it clings

to the meaningless distinction that their dismissals followed presidential pardons. And, the government insists that everything about Mr. Dunn's prosecution is "normal," despite facts that are anything but.

The government's opposition does not rebut how selective and vindictive this prosecution is; it confirms it.

## ARGUMENT

**A.    There is Clear Evidence of Selective and Vindictive Prosecution**

**1.    Both Comparator Groups Establish Unconstitutionally Selective Action**

Among the many indicia of political motivation detailed in Mr. Dunn's opening brief, Mr. Dunn identified two distinct "similarly situated" comparator groups against whom the law was not equally enforced, establishing the discriminatory effect of the instant prosecution: (1) low-level, apolitical defendants whose conduct mirrors Mr. Dunn's but who are never prosecuted in federal court, and (2) numerous January 6 defendants whose assaultive conduct was far more egregious yet whose federal cases were dismissed. Dunn Mot. at 9–15. These comparators make the point plainly: apart from political viewpoint, or the absence of one, there is "no distinguishable legitimate prosecutorial factor" that explains the difference in treatment between them and Mr. Dunn.

The government's effort to sweep aside these compelling comparisons is unavailing. As explained below, its opposition rests on invented legal standards unsupported by precedent, turns on distinctions—such as the presidential pardon in the January 6 cases—that are irrelevant to the core selective-prosecution inquiry, and

2

leaves unanswered the central question: if not politics, what legitimate explanation exists for the stark disparity in treatment?

### a.    Low-Level Apolitical Offenders

As established in Mr. Dunn's opening brief—and common sense to most federal practitioners—low-level assaultive conduct of the type alleged here, when prosecuted at all, is routinely charged in Superior Court. Dunn Mot. at 10–12. Rather than engage with that reality or attempt to dispute it, the government reframes the issue, claiming that despite Mr. Dunn's clear identification of a valid comparator group, his claim automatically fails because "[he has not] identif[ied] a single person who falls into this category." Gov't Opp. at 11.

That argument collapses under its own weight. The absence of apolitical defendants prosecuted federally for conduct like Mr. Dunn's is not a failure of proof—it is the proof. The government demands that Mr. Dunn produce an example of an apolitical individual prosecuted for identical conduct, but the uncontested fact is that no such examples exist.

Notably, while faulting Mr. Dunn for purportedly failing to show that low-level offenders comparable to him are not prosecuted in D.C. federal court, the government offers no contradictory examples. Instead, relegated to a footnote, it cites three cases, two from outside the district, involving federal assault charges for spitting on law enforcement officers. Gov't Opp. at 11 n.2. Spitting on a person, particularly a law enforcement officer, is widely recognized as more serious than throwing a soft object: it entails direct, offensive physical contact, carries an inherent risk of transmitting disease, and is often treated as an assault implicating significant health and safety concerns. By contrast, throwing a soft object that causes no injury presents no

comparable risk, force, or physical intrusion. And even in the spitting category, the government manages to cite only a single in-district example.[1]

Moreover, the government's claim that Mr. Dunn has not adequately established that low level offenders are not federally prosecuted is simply wrong. As detailed in the opening brief, a targeted Westlaw search of D.D.C. trial court filings corroborated what any experienced federal practitioner already knows: low-level assault cases are rarely, if ever, "federalized." This well-known reality is part of the evidentiary landscape the Court may, and should, consider. *See Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977)); *accord Nat'l Endowment for Democracy v. United States*, No. 25-cv-00648, 2025 WL 2305477, at *4 (D.D.C. Aug. 11, 2025) ("The [judiciary is] not required to exhibit a naïveté from which ordinary citizens are free.") (citation omitted).

Confronted with a valid comparator group, the government shifts ground and invents a legal standard found nowhere in the case law. Under the government's view, a selective prosecution claim fails unless the defendant can produce a precise, exhaustive list of apolitical individuals engaged in identical conduct who were spared prosecution. That is not the law.

---

[1] In fact, spitting cases are themselves rarely prosecuted in D.C. federal court, for the obvious reason that such offenses are typically handled at the local level. A recent example proves the point. On September 18, 2025, the government moved to dismiss Kristal Esquivel's felony 18 U.S.C. § 111(a) charges for spitting on and kicking law enforcement officers — conduct far more serious than that Mr. Dunn is accused of — because "it would be in the interests of justice to prosecute [her] for this incident in the District of Columbia Superior Court." Unopposed Mot. to Dismiss Compl. Without Prejudice and to Vacate the Preliminary Hr'g, *United States v. Esquivel*, Case No. 1:25-mj-162-ZMF (D.D.C. Sept. 18, 2025), Dkt. No. 12 (emphasis added).

Indeed, in *United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972)—a case directly on point and conspicuously absent from the government's opposition—the court rejected exactly the kind of narrow comparator requirement the government now urges. *Id*. at 1150. Steele, a publicly vocal opponent of the then-administration's census procedures, was prosecuted for refusing to answer census questions. *Id*. He argued that "many others," who were either apolitical or whose views were unknown to authorities, had committed the same offense but were not prosecuted. *Id*. at 1151. Steele's access to comparator data was necessarily limited, and when he requested relevant charging information from the government, they refused to produce it.[2] *Id*.

Under these circumstances, the court looked beyond the modest comparator evidence offered by the defendant and focused on the surrounding circumstances, which strongly suggested political targeting. Critical to the Court's analysis was the fact that the prosecuting authorities had publicly identified Steele as a member of a political opposition group—the "census resistance movement"—and conceded they were "very concerned about" him. 461 F.2d at 1151. Recognizing that "an enforcement procedure that focuses upon the vocal offender is inherently suspect," and with the government

---

[2] Similar to Mr. Steele, Mr. Dunn requested discovery from the government regarding relevant comparator data and charging decisions by the government. On October 8, 2025 the defense requested discovery from the government which included the following request: "Since January 20, 2025, please identify the number of arrests in the District of Columbia prosecuted federally for simple assault against a law enforcement officer and identify the alleged assaultive conduct at issue. This includes but is not limited to all arrests that were "no-papered," subject to a nolle prosequi motion, or otherwise disposed of without an indictment or information being filed." *See* Exhibit A. The government produced no responsive documents.

unable to offer any legitimate alternative explanation, the court overturned Steele's conviction, holding that the prosecution was selective and unconstitutional. *Id*. at 1152.

The parallels here are unmistakable. Like Steele, Mr. Dunn has presented a valid comparator group: low-level, apolitical defendants who, when prosecuted at all, face charges in local court, not federal court. And like Steele, Mr. Dunn's access to broader comparator data has been curtailed by the government's refusal to produce it. Most importantly, as in Steele, the surrounding circumstances point directly to political animus. While in *Steele*, the authorities privately branded the defendant a member of the "census resistance movement," here, Attorney General Pam Bondi publicly labeled Mr. Dunn a member of the "Deep State"—a group the administration has described as "a sinister group of radical left Marxists, warmongers, and corrupt special interests who drained our wealth, attacked our liberties, obliterated our borders, and sucked our country dry."[3] In both cases, political identity, not neutral prosecutorial judgment, is the "only plausible explanation" for the decision to prosecute. 461 F.2d at 1152.

### b.    The January 6 Defendants

The government's attempt to dismiss the January 6 comparator group is no more persuasive than its effort to sidestep the apolitical comparator group. With respect to the apolitical group, the government implausibly feigns ignorance of the well-known absence of low-level offenders charged federally. That line of attack is unavailable here.

---

[3] Donald J. Trump, Remarks at a Conservative Political Action Conference in National Harbor, Maryland (Feb. 22, 2025), in Compilation of Presidential Documents. Addresses and Remarks, https://www.govinfo.gov/content/pkg/DCPD-202500295/pdf/DCPD-202500295.pdf.

The government does not—and cannot—dispute that numerous January 6 defendants were charged under the same statute as Mr. Dunn, that their assaultive conduct was far more serious, and that their federal cases were nonetheless dismissed while Mr. Dunn's prosecution continues. Confronted with these indisputable similarities, the government offers only two purported reasons for its assertion that "January 6 defendants are not comparable to the defendant": first, that the dismissals followed presidential pardons; and second, that January 6 defendants prosecuted before the pardons cannot serve as comparators because they were prosecuted. Gov't Opp. at 12. Neither withstands scrutiny.

The government's first objection—that the January 6 dismissals are legally insufficient comparators because they followed presidential pardons—is ungrounded in any caselaw and grossly misstates the selective-prosecution inquiry. The question is not by what mechanism did the government treat certain defendants more favorably, but whether they were treated differently in the first place. *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1137 (D.C. Cir. 2023) (citation omitted) ("The similarly situated requirement strikes the proper balance between executive discretion and judicial enforcement of constitutional rights by isolating whether a decision turns on 'unlawful favoritism,' rather than lawful prosecutorial considerations.").

The government's second objection—that January 6 defendants prosecuted before receiving pardons cannot be comparators because they were prosecuted—fails for the same reason. The relevant comparator analysis looks to whether the government ultimately imposed harsher treatment on one defendant than on others similarly situated. Here, those January 6 prosecutions ended in complete dismissal, erasing any

consequence of the charges. In contrast, Mr. Dunn's prosecution was initiated and continues. The fact that certain January 6 defendants were initially prosecuted before receiving pardons does not alter the reality that their ultimate treatment—dismissal—was far more lenient than the treatment the government has chosen to impose on Mr. Dunn. The disparity in outcomes remains both real and legally significant.

More revealing than the arguments the government advances are the ones it does not. It does not even attempt to argue that the January 6 defendants are not "similarly situated" to Mr. Dunn. Indeed, the government appears to concede the point, offering only a single line about "the obvious factual mismatch" between January 6 defendants and Mr. Dunn—without identifying a single, let alone "obvious," factual distinction. Gov't Opp. at 12. There is no "mismatch." Other than their politics, there are no meaningful distinctions between Mr. Dunn, who is accused of an assault the government contends was motivated by his opposition to policing and immigration policies, and the January 6 defendants whose assaults also were politically motivated.

Nor does the government attempt to identify any legitimate prosecutorial factor explaining the disparity. Instead, it asserts that Mr. Dunn was prosecuted to reflect an "emphasis on protecting law enforcement from assaults … and deterring those who assault law enforcement who are supporting public safety." Gov't Opp. at 14. That rationale only begs the question: why is protecting law enforcement from assaults an enforcement priority when the alleged conduct is throwing a sandwich, but not when

the conduct involves coordinated violence in which officers were beaten,[4] had explosive devices thrown at them,[5] and were assaulted with baseball bats and riot shields?[6] The answer—effectively conceded by the government in its silence—is obvious: the disparity is not explained by neutral enforcement priorities; it is explained by political viewpoints.

### 2. The Government Fails to Rebut the Clear Showing of Discriminatory and Vindictive Purpose

As the government acknowledges — and as Mr. Dunn explained in his opening brief — where, as here, a selective prosecution claim is based on viewpoint discrimination under the First Amendment, a defendant need only demonstrate "discriminatory effect" to prevail. Gov't Opp. at 5 & 6 n.1; *see also Frederick Douglass Found*, 82 F.4th at 1145 ("A First Amendment challenge to speech-infringing enforcement, as with speech-infringing regulation, requires no allegation of bad motive"). But here, the facts make discriminatory purpose impossible to ignore.

Furthermore, the surrounding circumstances of Mr. Dunn's arrest and prosecution demonstrate the authorities' actual vindictiveness. *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001) (proving actual vindictiveness requires objective evidence that the prosecutor's actions were "designed to punish a defendant for asserting his

---

[4] *See* Stmt. of Facts at 2, *United States v. Ball*, No. 23-cr-160 (D.D.C. Apr. 27, 2023), Dkt. No. 1-1.

[5] *See* Mot. in Supp. of Pretrial Detention at 1, 4, *United States v. Boughner*, No. 22-cr-20 (D.D.C. Dec. 19, 2021), Dkt. No. 9.

[6] *See* Gov't Resp. to Mot. for Release at 1–2, *United States v. Lang*, No. 21-cr-53 (D.D.C. Feb. 21, 2024), Dkt. No. 127.

legal rights"). At a minimum, they establish evidence sufficient "to show . . . a realistic likelihood of vindictive motivation," thereby raising a presumption the government must rebut with objective evidence justifying its actions. *United States v. Safavian*, 644 F. Supp. 2d 1, 12–13 (D.D.C. 2009), *aff'd*, 649 F.3d 688 (D.C. Cir. 2011) (citation modified). The government's opposition falls far short of meeting that burden, failing to dispel the inference — if not the conclusion — that Mr. Dunn's prosecution was driven by improper political motives.

In its opposition, the government implausibly insists that the circumstances surrounding Mr. Dunn's federal arrest and prosecution are neither "novel" nor "extraordinary." Barely passing the smell test, it claims there is "nothing unusual" here. In doing so, the government asks the Court to accept that the following is "normal": For an accusation involving the tossing of a soft sandwich:

- The government pursued felony charges even after those charges were rejected locally and continued in its prosecution even after the grand jury refused to indict.[7]

---

[7] The government's Opposition disingenuously presents a timeline of the government's prosecutorial decision implying that the viral release of the video of the incident was not a factor. According to the government, "on August 12, 2025, a criminal Complaint was submitted in the United States District Court for the District of Columbia" charging Mr. Dunn with violating 18 U.S.C. § 111(a). By the time the government made its charging decision, however, the incident had gone "viral" on social media and appeared in online news coverage. *See, e.g.,* Oliver Willis, *Freedom fighter wields sub sandwich against Trump's DC gestapo*, Daily Kos (Aug. 12, 2025 at 12:00 PM), https://www.dailykos.com/stories/2025/8/12/2338011/-Freedom-fighter-wields-sub-sandwich-against-Trump-s-DC-gestapo.

- The highest-ranking prosecutor in the District of Columbia publicly taunted Mr. Dunn on the social media site X.

- The government staged, for spectacle, a militarized arrest.

- The President of the United States personally broadcast video of that arrest worldwide via his official White House account to millions of viewers.[8]

This is not "normal." It is extraordinary. It is unprecedented. And much of it violates DOJ's own guidance, which instructs prosecutors to refrain from prejudicial public commentary, avoid encouraging media spectacle, and prevent the appearance of bias. *See* DOJ Justice Manual §§ 1-7.610, 1-7.610(B). Such measures are so rare that their very occurrence supports an inference of discriminatory intent. *See Branch Ministries v. Rossotti*, 970 F. Supp. 11, 17 (D.D.C. 1997) ("The very rarity of an official act can support a finding of discriminatory intent . . .").

    But it does not stop there. In the most telling piece of evidence of the political motivation animating Mr. Dunn's prosecution, the Attorney General, herself, openly admitted it. In direct response to the viral video of the incident, the administration's top prosecutor publicly labeled Mr. Dunn a political enemy, as a member of the "Deep State." When the Attorney General publicly comments on a criminal defendant's politics, the message is unmistakable: political considerations are driving prosecutorial

---

[8] Remarkably, the government's Opposition completely ignores Mr. Dunn's theatrically staged arrest, at which authorities dispatched at least three videographers and ignores that the White House released a professionally edited clip of it. Sweeping it under the rug, the government instead broadly characterizes all processes to which Mr. Dunn was subjected as routine and normal. But, of course, Mr. Dunn's arrest and the wide circulation of a music video style clip of it by the President of the United States is anything but.

decisions. *See Wayte v. United States*, 470 U.S. 598, 610 (1985) (finding discriminatory purpose present when "the decision maker . . . select[s] or reaffirm[s] a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group" (citing *Pers. Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (omission in original)).[9]

The government's attempt to pass off these events as part of its "normal process" and a supposedly neutral "emphasis on protecting law enforcement from assaults," Gov't Opp. at 14, doesn't hold water, especially when compared with the treatment of numerous January 6 defendants, and, recently, Ms. Esquivel, described above in footnote 1, a woman who spat directly on an officer but whom the government nonetheless agreed "in the interest of justice" should be prosecuted locally, rather than federally. Such starkly different outcomes undermine the claim of a consistently applied, neutral policy and make plain that Mr. Dunn's prosecution was driven by something other than legitimate enforcement priorities. *See United States v. Rodella*, 59 F. Supp. 3d 1331, 1352 (D.N.M. 2014) ("[T]he United States must justify its prosecutorial decision based on legitimate, articulable, objective reasons." (citation modified)).

---

[9] In the same video in which she declared Mr. Dunn a member of the "Deep State," Attorney General Bondi also declared that Mr. Dunn would be fired. The government asserts that this is not proof of discrimination. Gov't Opp at 14. However, the government's hiring of Jared Wise Lane, a January 6 defendant who was pardoned for his participation in the attacks of law enforcement officers, while firing Mr. Dunn is yet another stark example of the disparate treatment Mr. Dunn has received when compared to individuals with views supportive of the current administration.

### B.    At a Minimum, Discovery and an Evidentiary Hearing Are Warranted

Because there is sufficient evidence to warrant dismissal of this selective and vindictive prosecution on the current record, Mr. Dunn has amply met the threshold showing to obtain discovery. Mr. Dunn has attempted to seek that discovery by letter request, dated October 8, 2025, attached hereto as Exhibit A. In that discovery demand, Mr. Dunn narrowly tailored a limited number of requests relevant to "materials related to political considerations in Mr. Dunn's prosecution." To date, the government has not produced any responsive documents.

In order to obtain discovery with respect to a claim of selective prosecution, a defendant must "show[] some evidence tending to show the existence of the essential elements of the claim." *See United States v. Barnes*, No. 18-MJ-54 (rmm), 2019 WL 5538550, at *7 (D.D.C. Oct. 24, 2019) (citation modified), *aff'd*, 481 F. Supp. 3d 15 (D.D.C. 2020). Defendants have met this burden by presenting evidence that merely "suggests" a potentially impermissible motive for the defendant's prosecution. *See, e.g.*, *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (noting that the "trial court permitted discovery" on a selective prosecution claim, "after the defendant introduced evidence suggesting a link" between government foreign policy and individuals exercising certain religious beliefs); *United States v. Jones*, 159 F.3d 969, 978 (6th Cir. 1998) (reversing denial of discovery on selective prosecution claim when a Black defendant had identified racially insensitive statements by local law enforcement officials and had presented evidence that the relevant local police department had declined to refer "non-African American-defendants" arrested for similar drug crimes for federal prosecution).

Similarly, a defendant is entitled to discovery and an evidentiary hearing when there is some evidence of vindictiveness. *See United States v. Heidecke,* 900 F.2d 1155, 1159 (7th Cir. 1990) ("Requiring the defendant to prove more than a colorable claim before compelling discovery might prematurely stifle a legitimate defense of vindictive prosecution for lack of evidence."); *United States v. Adams,* 870 F.2d 1140, 1146 (6th Cir. 1989) (upon a *prima facie* showing of vindictiveness, "it is incumbent upon the district court to conduct an evidentiary hearing where the government's explanations can be formally presented and tested") (citation modified).

The government's attempt to deny Mr. Dunn discovery and a hearing rests on a bald, unsupported assertion—flatly contradicted by the record—that "[Mr. Dunn] was prosecuted [federally] [solely] because he assaulted a federal law enforcement officer who was working to support public safety in the District of Columbia." Gov't Opp. at 16. This effort necessarily fails. Courts order evidentiary hearings precisely to test unsupported, uncorroborated, and self-serving government claims. To make an informed ruling on Mr. Dunn's motion, the Court must have the benefit of a record developed through discovery and a hearing—procedures to which Mr. Dunn is, at minimum, entitled to expose the federal government's tenuous justification for federalizing this case. *See United States v. Zakhari*, 85 F.4th 367, 383 (6th Cir. 2023) ("By relying on unsupported assertions without permitting [the defendant] to test them, the court abused its discretion."); *see also United States v. LaDeau*, 734 F.3d 561, 572 (6th Cir. 2023) ("We are not persuaded that the subjective rationales offered by the government . . . are sufficiently 'objective' explanations for the government's conduct . . . ."); *United States v. Abrego Garcia,* No. 3:25-cr-00115, slip op. at 2-3 (M.D. Tenn. Oct. 3,

14

2025) (Crenshaw, J.) (where defendant carries his burden demonstrating "some evidence" of vindictiveness, an evidentiary hearing is necessary "[to] test[] [the government's explanations] in an adversarial setting"); *Adams*, 870 F.2d at 1146 ("[W]here there has been a prima facie showing of a realistic likelihood of vindictiveness, it is incumbent upon the district court to conduct an evidentiary hearing where the government's explanations can be formally presented and tested") (citation modified).

## **CONCLUSION**

For the foregoing reasons, Mr. Dunn respectfully requests that the Court

dismiss this case or, in the alternative, order discovery and a hearing.

Respectfully submitted,

/s/
Sabrina P. Shroff (D.D.C. Bar No.
NY0481)
80 Broad Street, 19th Floor
New York, NY 10004
Tel: (646) 763-1490
sabrinashroff@gmail.com

Julia Gatto (Pro Hac Vice)
STEPTOE LLP
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 506-3900
Fax: (212) 506-3950
jgatto@steptoe.com

Nicholas Silverman (D.D.C. Bar No.
1014377)
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
nsilverman@steptoe.com
Counsel for Defendant
Sean Charles Dunn

*Counsel for Defendant Sean Dunn*

Dated: October 29, 2025

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing reply in support of his motion to dismiss the information for vindictive and selective prosecution and accompanying papers, was served via ECF, this 29th day of October 2025, upon all attorneys included on the ECF notice in case number 1:25-CR-00252 (CJN).

<u>/s/ Nicholas Silverman</u>
STEPTOE LLP

*Counsel for Defendant Sean Dunn*

17